THE STATE OF MONTANA, Plaintiff and Respondent, *v.* WRAY MEARL EVANS and JACK MARTIN PETERSON, Defendants and Appellants.

No. 11688.

Decided November 7, 1969.

460 P.2d 262.

Yardley & Yardley, Jack Yardley, argued, Livingston, for appellant.

Robert L. Woodahl, Atty. Gen., J. C. Weingartner, argued, Asst. Atty Gen., Helena, Bryon L. Robb, County Atty., appeared, Livingston, for respondent.

PER CURIAM.

Wray Mearl Evans and Jack Martin Peterson were found guilty of second degree burglary by a jury in the district court of Park County and they appeal from this conviction.

Defendants contend that there was insufficient evidence to support their conviction.

As to the evidence offered by the state, it appears from the record that on February 1, 1969, the farm of Ted Ward was

burglarized. Ted Ward's son, Bill Ward, testified that he saw defendant Peterson at his father's ranch one week before the break-in. Peterson had at that time gone through the barn with him.

One week later, February 1, 1969, he saw the defendants near his father's place. This time they were stuck in a snow drift, The defendants then turned around and headed toward Clyde Park. Later that evening he saw them again headed in the direction of his father's place. When he had left his father's place everything was in order.

Gene Davis, a nearby rancher, testified he was driving to Clyde Park at about 6:30 p.m. on February 1, 1969. As he passed Ted Ward's place, with which he was familiar, and having been there previously that day around 4:30 p.m., he noticed a 1959 Ford parked by the side of the road near the ranch buildings. He stopped his car and investigated the automobile. He noticed a figure dash between the garage and cow shed. He then walked toward these buildings and saw defendant Evans hiding behind the shop and also noticed some saddles were missing. He brought defendant Evans back to the road where their vehicles were parked. At this time, Jim Mitchell and his son-in-law, Martin Lyle Vennes, area ranchers, stopped and offered their assistance. Mitchell watched defendant Evans while he and Vennes went back to the buildings and found defendant Peterson who was hiding in the cow shed.

When he first discovered Evans he asked him what he was doing there and Evans told him the car was out of gas and he, Evans, was looking for gas. Testimony of another witness who checked the car when it was stopped at the road block indicated the tank gauge showed one-fourth of a tank, and the car was driven from Clyde Park to Livingston without adding any gas to the tank.

Davis further testified that four saddles and some blankets had been removed from their storage place in the barn and were found stacked outside in the fresh snow. A Honda motorcycle

had also been taken outside and was laying on the snow. Both defendants were brought back to the road and Davis left to call the sheriff.

Mitchell and Vennes both testified that they remained with the defendants at the road and after a while defendants requested permission to sit in their car and get warm and get a cigarette. Since it was fairly cold outside this permission was granted and they were permitted to get in their car. They got in the car, started the motor and drove off.

Mitchell and Vennes followed the mdown the road until a certain house was reached from which a telephone call was made to Clyde Park.

When the defendants neared Clyde Park they were stopped at a road block and apprehended by the authorities.

Defendants argue that because they had been drinking, had parked their vehicle with an out of county license on a frequently travelled road where it was easily seen by anyone travelling that road, and the further fact that an hour and one-half had elapsed from the time Davis had previously been at the Ward ranch until his return, that during that period of time anyone besides them could have removed the saddles and Honda motorcycle from the buildings and then left the area.

To offset this argument, however, is the fact that Evans was hiding behind the shop when Davis found him. Peterson was hiding in the cow shed when Davis and Vennes found him. The tracks of these men were easily visible in the snow and Davis testified that he asked Evans where his partner was when he found him at his hiding place, as follows:

"Q. What did you and Mr. Evans do? A. Well, I told him to get his partner and we would go out to the car there. And he says, what partner? He says, I don't know anything. I said, I know there is another fellow along because I can see his tracks leading to the cow shed. He says, well, I don't know anything, I am just riding along. He said this fellow that he

64

was with broke some horses up the creek here and the fellow wouldn't pay him and he was after the saddles."

They did not have the owner's permission to be on, the property or enter any buildings; they had been seen there during the afternoon of the same day the entry was made. When permitted to enter their car they tried to escape.

It is our view that the evidence is amply sufficient to support the verdict and the judgment of conviction entered thereon is affirmed.