IN RE PETITION OF JACK MARTIN PETERSON

No. 11849.
Decided April 1, 1970.
467 P.2d 281.

Jack Martin Peterson, pro se.

MEMO OPINION

PER CURIAM:

Petitioner seeks post-conviction hearing following the affirmance of his conviction by this Court. See State v. Evans and Peterson, 154 Mont. 61, 460 P.2d 262.

As petitioner notes in his petition he and one Wray Mearl Evans were jointly charged with burglary, were tried together as codefendants and were found guilty, and the court appointed counsel for their joint defense. His claim now is that he was deprived of his right to effective counsel in that a prosecution witness was permitted to give testimony of a hearsay statement purported to have come from the mouth of petitioner's codefend-

ant which seriously implicated petitioner; that at such time the interests of petitioner and his codefendant became adverse and there was a conflict of interest in joint representation by the same counsel, and for this reason he was denied his option to testify on his own behalf.

The trial record discloses that neither defendant testified at their trial. Counsel appointed for the defendants is an experienced trial lawyer, and a former county attorney.

As we related in our opinion covering petitioner's appeal, supra, a witness saw a car parked by the side of a road near ranch buildings with which he was familiar. He stopped to investigate and as he did so he noticed a figure dash between the garage and cow shed; he walked towards these buildings and saw Evans hiding. He asked him what he was doing there and Evans told him the car was out of gas and he was looking for gas. Since two men's tracks were visible in the snow the witness said to Evans: "Well, I told him to get his partner and we would go out to the car there. And he says, what partner? He says, I don't know anything. I said, I know there is another fellow along because I can see his tracks leading to the cow shed. He says, well, I don't know anything, I am just riding along. He said this fellow that he was with broke some horses up the creek here and the fellow wouldn't pay him and he was after the saddles."

The situation then was that the witness who testified was familiar with the premises; he saw a man run between the garage and cow shed; he saw defendant Evans hiding behind the shop; he saw four saddles and some blankets had been stacked outside the barn in the fresh snow; he asked Evans what he was doing there; then he asked where his partner was and received the answers as heretofore stated. Immediately after taking Evans out to the road the witness and another went back to the buildings and found petitioner hiding in the cow shed.

Both petitioner and his codefendant were engaged in the com-

mission of a felony, burglary, when the statements of Evans were made. They were "caught in the act."

In Territory v. Campbell, 9 Mont. 16, 22 P. 121, this Court stated:

"The prosecuting witness Milroy and one Dooley reside on adjoining farms, and on the morning of the trouble he saw Dooley, Blair King, the defendant, Campbell, and Orenoe Shaud standing at Dooley's stables, where they seemed engaged in getting guns out of the house, and were firing them off in the direction where the witness was occupied in erecting a division fence between his and Dooley's farm. Shortly afterwards Dooley came up with the foregoing party, all armed, and, claiming the land as his, objected to the fence being built. The prosecuting witness protested against Dooley's taking the law into his own hands after this fashion, whereupon the latter immediately began firing upon Milroy, and called out: 'Fire, boys!' which command was obeyed by defendant, who deliberately fired four shots at the prosecuting witness, striking him once in the left knee. Counsel for defendant objected to what Dooley said at the time being received in evidence, but the court, we think, correctly overruled the objection, as it was evidently a part of the *res gestae*. The party had deliberately armed thmselves and gone to where Milroy was engaged in building his fence. Dooley was the spokesman and commander, and directed the firing by the others. From this statement it is evident that whatever Dooley or any of the firing party said on this occasion was admissible in evidence as a part of the *res gestae*. It is always very difficult to lay down any precise rule as to what constitutes the '*res gestae*' of the transaction, but whenever the acts or declarations are concomitant with the principal act complained of, and evidently not made from design, then the act or declaration is admissible. And in the present instance we are not prepared to say that a *prima facie* case of conspiracy had not been sufficiently established to justify the admission in evi-

242

dence of Dooley's declarations. 1 Greenl. Ev., §§ 108-110; Dismukes v. State, [83 Ala. 287] 3 South.Rep. 671; State v. Moore, 38 La.Ann. 66.''.

Later, while not in a criminal case, this Court defined res gestae in these words:

" 'Res gestae are the circumstances, facts, and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character.' State v. Broadwater, 75 Mont. 350, 243 P. 587, 589. Declarations made while the mind of the speaker is laboring under the excitement aroused by the accident, before there was time to reflect and fabricate, are admissible. Such statements need not be entirely contemporaneous with the main incident; they may be in the form of narrative. Yet, if circumstances show they were made while the excitement produced by the incident still dominated the mind and was a producing cause, they are nevertheless part of the main event and competent. On the contrary, if they are in fact mere narrative, they are not competent. Callahan v. Chicago, B. & O. R. R. Co., 47 Mont. 401, 133 P. 687, 47 L.R.A.,N.S., 587. Whenever a question of fact arises upon conflicting evidence as to whether declarations are a part of the res gestae or depends upon contradictory inferences, either of which may fairly be drawn from such evidence, the solution of the question of admissibility of the evidence must be in every case be left largely to the sound legal discretion of the trial court, subject to review only in case of manifest abuse. (Callahan case, supra.)'' Sullivan v. Metropolitan Life Ins. Co., 96 Mont. 254, 29 P.2d 1046.

We affirmed this ruling in State v. Medicine Bull, 152 Mont. 34, 445 P.2d 916.

Upon these authorities we hold that the statements made by Evans were part of the res gestae and as such admissible in evidence upon the joint trial, and had there been separate trials the statements would still have been admissible in each trial for the

same reason. Thus no adverse or conflicting interests existed as between petitioner and his codefendant and he was not deprived of effective counsel.

For these reasons no merit appears in the petition and no necessity exists for a hearing thereon. The relief sought is denied and the proceeding is dismissed.