THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
PAUL DESHNER, DEFENDANT AND APPELLANT.

No. 12067.
Submitted September 21, 1971.
Decided October 29, 1971.
489 P.2d 1290.

Dirk Larsen, argued, Great Falls, for defendant-appellant.

Robert L. Woodahl, Atty. Gen., Helena, J. C. Weingartner, Asst. Atty. Gen., argued, Helena, J. Fred Bourdeau, County Atty., R. William Walsh, Deputy County Atty., Great Falls, for plaintiff-respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of conviction arising out of an automobile accident death. Defendant was charged with manslaughter in the county of Cascade, tried by a jury, convicted, and sentenced to one year at hard labor in the Montana state penitentiary.

The facts are: Defendant, Paul J. Deshner, and the deceased, William Steen, were friends. On June 20, 1970, together they did some yard work and while so doing consumed several beers. In the evening of that same day, they took off for a night on the town. Beginning about 7 p.m., they spent the next twelve hours visiting various bars in the Great Falls area, drinking beer and playing pool. During the early morning hours of June 21 they had breakfast, then drove to a bar called "Dusko's," located at Sand Coulee, Montana, arriving there between 3 and 3:30 a.m.

There they found a party of friends drinking, although 2 a.m. is the legal closing time; they joined the group and all continued to drink beer until they left at approximately 9 a.m., Sunday morning, June 21. There were three cars involved in transporting the group back to Great Falls. Testimony reveals that none of the group was in a condition to drive safely. At the trial witnesses for the state testified they told the investigating highway patrolman that defendant was driving the car containing Deshner and Steen at the time the vehicle left "Dusko's"; that Deshner, defendant herein, was in the driver's seat and Steen in the passenger's seat. The three vehicles left the bar at about the same time. The vehicle driven and owned by defendant passed one of the other three vehicles a short way down the road, at a speed estimated at 80 m.p.h. A few miles from the bar defendant's vehicle left the road, ending up in a grain field. Defendant and Steen were thrown from the vehicle. Steen was killed.

Occupants of the other two cars testified they saw a cloud of dust when defendant's automobile left the road; that when they got to the car they found defendant lying on the right side, or the passenger's side of the car, and Steen on the left side or driver's side of the car. Defendant was taken to a Great Falls hospital unconscious and while in this condition a blood sample was taken. The sample showed .021 percent alcohol by weight. A sample taken from Steen showed .025 alcohol by weight.

Highway patrolman Richard Zaharko, who arrived at the scene of the accident some twenty to thirty minutes later, testified the occupants of the other two vehicles told him defendant was driving the car at the time of the accident. He testified as to measurements taken at the scene and that in his opinion, based on experience, defendant was the driver of the car. Defendant testified that Steen was the driver.

Defendant raises five issues on appeal.

1. Whether there was sufficient evidence to support a verdict of guilty?

2. Whether the results of a blood alcohol test may be ad-

mitted in evidence, when the test was conducted without the consent of the defendant?

3. Whether a highway patrolman should have been allowed to give opinion testimony concerning how the accident occurred and as to who was driving?

4. Whether a highway patrolman should have been allowed to repeat alleged hearsay evidence?

5. Whether the state should have been permitted to introduce evidence of prior driving offenses?

We find no merit to appellant's issue No. 1 for there was abundant evidence in the record from which the jury could find the appellant the driver of the vehicle: (1) Jack Charlson, one of the all night party, testified that as they left the bar he went to appellant's car and saw him in the driver's seat. He told the highway patrolman that appellant was the driver; (2) Darrell Johnson, who rode with Charlson, testified appellant was in the driver's seat when they left the bar and when Charlson's car passed appellant's car, appellant was driving; (3) Robert S. Kerr testified he saw appellant in the driver's seat, revving up his motor, and that while he was riding in a car driven by his wife, he saw appellant pull in right behind their car as they were leaving the bar.

Patrolman Zaharko after carefully analyzing the evidence reconstructed the accident for the jury and came to the conclusion appellant was driving; and, in his opinion, Steen was sitting in the passenger's seat and was thrown from the car on the initial impact.

From the totality of the evidence a convincing case was made to the effect that appellant was the driver. It was the duty of the jury to see and hear the evidence, and then to decide from all the evidence presented. This it did. There being substantial evidence in the record to support its verdict, the action of the trial court will not be disturbed. State v. Walker, 148 Mont. 216, 419 P.2d 300; State v. Medicine Bull, Jr., 152 Mont. 34, 445 P.2d 916.

In issue No. 2, appellant takes issue with the trial court's

admission into evidence of a blood sample taken while appellant was unconscious. Appellant argues that if consent was not necessary to the taking of a blood alcohol test then the legislature of the state of Montana wasted considerable effort in passing the implied consent law. He further argues that although this Court did allow the admission of a blood test in State v. Haley, 132 Mont. 366, 318 P.2d 1084, in that case the defendant gave his consent, therefore the case is not controlling. Appellant contends he was not under arrest at the time the sample was taken, therefore the search violated his constitutional rights.

We find no merit in this argument. We recognize that in *Haley* the defendant gave his consent, but in that case, Mr. Justice Adair, speaking for the entire Court, referred to and adopted the language found in Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed2d 448. In that case the defendant also was unconscious at the time the blood sample was taken, but the evidence was admitted.

Since *Breithaupt* (1957) the United States Supreme Court has again considered a blood sample case, where the attack was that there was a violation of the Fifth Amendment guarantee— the right of a person to remain silent, in Schmerber v. California, 384 U.S. 757, 768, 86 S.Ct. 1826, 1834, 16 L.Ed2d 908 (1966). There the Court found no violation of appellant's Fifth Amendment rights, and then went on to reconsider *Breithaupt*, particularly as to whether the withdrawal of the blood sample was an unlawful seizure violating the appellant's rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution. The Court established the following test:

"We begin with the assumption that once the privilege against self-incrimination has been found not to bar compelled intrusions into the body for blood to be analyzed for alcohol content, the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. In other words, the questions we must decide in this

case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness.''

The Court found that the taking of the blood sample was proper and approved such taking without a warrant and without consent because, as in the case at bar, the officer ''might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of the evidence' '' i. e., the reduction of the percentage of alcohol in the blood. In addition, the Court found that the means and procedures used in the taking of the blood were reasonable. We find no violation of appellant's constitutional rights.

Appellant's issue No. 3 questions the opinion evidence given by the highway patrolman. In a number of recent cases this Court has considered the admissibility of opinion and expert testimony. In State v. Campbell, 146 Mont. 251, 258, 405 P.2d 978, 983, this Court said:

''The basic rule on the admissibility of expert opinion is whether the subject is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness, or whether the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.''

Here, we have more than mere opinion evidence or that of common experience; we have the testimony of a patrolman who had investigated some 900 to 1,000 accidents, including from 40 to 60 fatal accidents. In addition to qualifying in regard to investigations as a patrolman, he qualified as a mechanic, having had some 10 years experience as a mechanic before becoming a patrolman. Thus his credentials were such as to qualify him as an expert witnss in the accident investigation field.

Upon arriving at the scene of the accident some 30 minutes after it had occurred, he interviewed all the occupants of the

other cars who were at the scene, made numerous and detailed measurements and, based on all he saw and heard, he was allowed to reconstruct the accident. We find no error by the trial court in allowing this testimony. In State v. Stoddard, 147 Mont. 402, 412 P.2d 827, we recognized highway patrolmen as expert witnesses:

"'\* \* \* this court has long held that a highway patrolman charged with the investigation of an accident who· views, investigates, and measures, and on this basis thereby arrives at certain opinions could be considered an expert, the weight being for the jury's consideration. Hurly v. Star Transfer Company, 141 Mont. 176, 376 P.2d 504.''

The Court went on to state that highway patrolmen should be allowed to state their opinions regarding the fruits of their investigation:

"Patrolman Thomson testified he had some 10 years with the Patrol and had investigated over 700 accidents. He should have been allowed to state his opinion as to the point of impact. State v. Souhrada [122 Mont. 377, 204 P.2d 792], supra; State v. Cline, 135 Mont. 372, 339 P.2d 657; State v. Bosch, 125 Mont. 566, 242 P.2d 477.''

Appellant's issue No. 4 questions the trial court's decision to allow into evidence the statements of the occupants of the other two cars as to who was driving appellant's car, alleging that these statements were hearsay.

In two recent opinions of this Court we have discussed whether statements of this type fall within the res gestae exception to the hearsay rule. State v. Medicine Bull, Jr., 152 Mont. 34, 445 P.2d 916, and In re Petition of Peterson, 155 Mont. 239, 467 P.2d 281. In *Peterson* we reaffirmed our holding in *Medicine Bull, Jr.* as follows:

" 'Declarations made while the mind of the speaker is laboring under the excitement aroused by the accident, before there was time to reflect and fabricate, are admissible. Such statements need not be entirely contemporaneous with the main in-

cident; they may be in the form of narrative. Yet, if circumstances show they were made while the excitement produced by the incident still dominated the mind and was a producing cause, they are nevertheless part of the main event and competent. On the contrary, if they are in fact mere narrative, they are not competent. Callahan v. Chicago, B. & Q. R. R. Co., 47 Mont. 401, 133 P. 687, 47 L.R.A.,N.S., 587. Whenever a question of fact arises upon conflicting evidence as to whether declarations are a part of the *res gestae* or depends upon contradictory inferences, either of which may fairly be drawn from such evidence, the solution of the question of admissibility of the evidence must in every case be left largely to the sound legal discretion of the trial court, subject to review only in case of manifest abuse. (Callahan Case, supra.)' Sullivan v. Metropolitan Life Ins. Co., 96 Mont. 254, 29 P.2d 1046.''

As we noted in *Medicine Bull, Jr.* ''the solution of the question of admissibility of the evidence must in every case be left largely to the sound legal discretion of the trial court, subject to review only in case of manifest abuse.'' Finding no such abuse or prejudice here, the statements were properly admitted.

■ Appellant's final issue raised the admissibility of appellant's past driving record. For a young man, he has acquired a most unusual driving record. The prosecution, on cross-examination only introduced a part of his record—15 apprehensions for driving without a license, and there were more! Besides the 15 driving without a license offenses, he had: 12 speeding charges, 6 violations of basic rule; 1 displaying a fictitious driving license; 1 improper lane usage; 2 excessive muffler noise; all totaling in paid fines $1,951.00. The part of this unusual record introduced by the prosecution on cross-examination was admitted by reason of the fact appellant on the witness stand testified that over the past six years he had ''only'' been picked up five or six times, for driving while his license was suspended. In truth and fact, the Montana Highway Patrol and the local police department had accumulated the above enumerated rec-

ord over the period in question. By statute such evidence may be admitted into evidence. Section 93-1901-11, R.C.M.1947 provides:

"A witness may be impeached by the party against whom he was called, by contradictory evidence * * *."

In view of appellant's direct testimony regarding the number of times he had been apprehended, the trial court admitted the evidence but cautioned the jury as to its limited purpose:

"THE COURT. Overruled. The jury is instructed that this testimony is impeaching testimony. That is to say, merely admitted for the purpose of impeaching, if it does, the testimony of the defendant on the witness stand. And with that admonition you may read those things that you referred to."

In addition, the trial judge gave Instruction No. 7, a proper instruction covering the use of the evidence. With these precautions given the jury, we find that no prejudicial error resulted.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DALY, HASWELL, and CASTLES, concur.