No. 92-060

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

MELVIN GEORGE DOW,

     Defendant and Appellant.

FILED

DEC 30 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Philip Walsh, Bozeman, Montana

     For Respondent:

     Marc Racicot, Attorney General, Paul D. Johnson,
Assistant Attorney General, Helena, Montana; Mike
Salvagni, Gallatin County Attorney, Martin Lambert,
Deputy County Attorney, Bozeman, Montana

Submitted on Briefs:  November 18, 1992

Decided:  December 30, 1992

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

A jury in the District Court for the Eighteenth Judicial District, Gallatin County, convicted Melvin George Dow of robbery and sexual intercourse without consent. Dow appeals. We affirm.

The issues are:

1. Did the District Court err in denying Dow's two pre-trial motions to suppress evidence and statements obtained from him before and after his arrest?

2. Were Dow's constitutional rights violated by application of § 46-13-302(4), MCA (1989), which places the burden of proof upon a defendant moving to suppress evidence?

3. Was the evidence sufficient to convict Dow of robbery?

Late on the evening of Christmas Day 1990, a woman was assaulted as she walked home from a movie in downtown Bozeman, Montana. Her assailant grabbed her from behind, told her he had a gun and not to "get dumb," and walked her into a dimly-lit alleyway. The victim repeatedly asked him what he wanted. When she asked if he wanted her money, he said he did. At his direction, she removed her money from her purse and wallet and handed it to him. The victim then asked if she could go. The assailant replied, "No, there is one more thing." He raped her, then allowed her to leave.

The victim walked home and immediately called the police. Investigating officers escorted her back to the scene of the crime,

2

where two sets of footprints were clearly visible in fresh snow. The officers determined that one set of footprints was the victim's and that the footprints corroborated her story. The second set of footprints was made by a person wearing footwear which left a distinctive zigzag design in the prints.

One officer took the victim to the hospital for a rape examination and another began following the assailant's footprints away from the crime scene. There were few other tracks in the new snow. In some places, the footprints indicated that the person was traveling at a run and, in others, the person had doubled back over his own tracks or walked within vehicle tracks. The footprints eventually led to Room No. 11 of the Alpine Motel, several blocks from the crime scene.

When the police officer arrived at the motel, the lights were on in Room No. 11 and noise from a television or radio could be heard from within. After radioing for backup assistance and ascertaining at the motel office that one male was registered in Room No. 11, the officer knocked on the door. It was opened by Dow, clad only in his underwear.

Dow's appearance matched the description the victim had given of her assailant. Announcing himself as a police officer, the officer entered the room. Dow's boots were drying on a radiator. The pattern on the soles of the boots matched the zigzag pattern in the tracks the officer had been following. A pair of wet jeans

3

were hanging in the open closet. After the design on the soles of Dow's boots was compared with the footprints leading from the scene of the crimes, Dow was arrested.

Prior to trial, Dow moved to have evidence seized from his motel room suppressed on grounds that a search warrant was required before police officers could enter the room. He also moved to suppress a tape-recorded statement he gave shortly after his arrest. After briefing and evidentiary hearings, the District Court denied both motions.

I

Did the District Court err in denying Dow's two pre-trial motions to suppress evidence and statements obtained from him before and after his arrest?

Dow points out that under the Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution, warrantless felony arrests in the home are presumptively unreasonable and prohibited. He further points out that a person staying in a hotel or motel room is afforded the same constitutional protection as a person living in a home or other dwelling. U.S. v. Diaz (7th Cir. 1987), 814 F.2d 454, 457-58, cert denied, 484 U.S. 857; State v. Otwell (1989), 239 Mont. 150, 779 P.2d 500. He claims that no justification is present for breaching the prohibition against a warrantless intrusion into his motel room, and that the evidence seized from the room and his post-

4

arrest statements should be suppressed as fruits of an illegal entry.

The State maintains that police officers had probable cause to enter Dow's motel room and arrest him. The State further maintains that the officers were justified in entering the motel room without a warrant under the hot pursuit and exigent circumstances exceptions to the general prohibition against warrantless entries.

Exception is made to the warrant requirement where exigent circumstances and probable cause are present. Warden v. Hayden (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; State v. Sorenson (1979), 180 Mont. 269, 590 P.2d 136. Probable cause exists

> if the facts and circumstances within the officer's personal knowledge, or imparted to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense. (Citations omitted.)

State v. Schoffner (1991), 248 Mont. 260, 264, 811 P.2d 548, 551.

Dow does not seriously argue that the officer who knocked on his motel room door lacked probable cause to arrest him. When Dow opened the door to his room in response to the officer's knock, the facts known by the officer were: the victim had promptly reported a rape and robbery by an armed gunman; tracks in the snow at the scene corroborated her report; the only fresh set of tracks leading from the crime scene other than the victim's led to Dow's motel room and indicated that he was trying to avoid being followed; Dow was the only person registered in Room No. 11; and Dow matched the

5

physical description of the assailant. We conclude that the officer had probable cause to arrest Dow. We therefore proceed to consideration of whether exigent circumstances were present.

In Hayden, the United States Supreme Court recognized a particular type of exigent circumstance, when police in immediate pursuit tracked an armed robber to his home and entered the home without a warrant. The Court stated

> [The police] acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape.
>   . . . Here, the seizures occurred prior to or immediately contemporaneous with Hayden's arrest, as part of an effort to find a suspected felon, armed, within the house into which he had run only minutes before the police arrived. The permissible scope of search must, therefore, at the least, be as broad as may reasonably be necessary to prevent the dangers that the suspect at large in the house may resist or escape.

Hayden, 387 U.S. at 298-99. While hot pursuit requires "some sort of a chase, . . . it need not be an extended hue and cry 'in and about [the] public streets.'" United States v. Santana (1976), 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300, 305.

This Court has recognized the theory of hot pursuit, but in each Montana case in which the theory has been raised, it has been

6

deemed nonapplicable. In Sorenson, 590 P.2d at 139, this Court stated that the theory is not available to peace officers unless a felony has been committed and the suspect is fleeing. Dow claims the Sorenson opinion limits the definition of hot pursuit so that the facts of this case are outside that definition.

In Sorenson, police officers received a report of a boy who had threatened to shoot his high school principal. The boy was housesitting for Sorenson. While looking for the boy at Sorenson's house, officers found evidence of use and possession of illegal drugs. Eleven days later, the officers obtained a search warrant for Sorenson's house and charged Sorenson with drug offenses. They attempted to use a theory of hot pursuit to justify admission into evidence of items seized in the search of the house. This Court held that hot pursuit did not apply. Sorenson, 590 P.2d at 139.

The piggy-backing of nonrelated offenses by separate persons is not present in this case as it was in Sorenson. Further, at the time officers entered Sorenson's home without a warrant, no crime had been committed and they were not in pursuit of a felon.

In State v. District Court of Eighth Jud. Dist. (1978), 176 Mont. 257, 577 P.2d 849, which Dow cites, this Court held that a warrantless entry into an apartment approximately two hours after a murder was not justified under a theory of hot pursuit. In that case, however, the investigating officers were engaged in a general

7

investigation, not tracking the culprit from the scene of the crime.

Dow also cites Welsh v. Wisconsin (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732. In that case, police officers received a late-evening report of a car which had proceeded erratically on a highway and then into a field, after which the driver left the car on foot. Officers obtained the registration for the car and determined that it was owned by Welsh and that Welsh's home was near the field in which the car had been abandoned. The officers went to Welsh's home, where they arrested him for operating a motor vehicle while under the influence of an intoxicant. The Court held that the entry into Walsh's home was not justified as hot pursuit. Welsh, 466 U.S. at 753-54.

In Welsh, the Court relied heavily on the nature of the offense -- a civil forfeiture traffic offense for which imprisonment was not possible. There, the exigencies were insufficient to overcome the warrant requirement, in the context of an arrest for a mere civil traffic offense. In this case, in contrast, the offenses were two felonies. Moreover, in the present case, there was a significant continuing threat to the public safety as long as the assailant remained at large because, unlike Welch, the assailant had not abandoned his weapon. Also, in the present case, the officers did not have the assailant's address -- the only way

8

of tracking him was to follow his footprints from the scene of the crime.

We recognize that nearly two hours is a long "hot pursuit." However, the doctrine of "fresh pursuit" has been applied to a 75-minute pursuit of a suspect following a shooting. People v. Johnson (Cal. 1981), 637 P.2d 676. An Illinois court of appeals determined that "warm pursuit" justified entry into a private yard and garage several hours after multiple rapes were committed. People v. Morrow (Ill. App. 1982), 433 N.E.2d 985, 992. The court relied upon the limited scope of the search and the serious nature of the crime. Id.

Footprints in fresh snow present a rare situation in which the physical trail of an offender can clearly be followed away from the scene of a crime after the offender has left that scene. The Court of Appeals of Idaho has used the broader theory of exigent circumstances to justify admission of evidence seized about an hour after a robbery, following the tracking of footprints in fresh snow from the scene of the crime to a house in which defendants were arrested. State v. Campbell (Idaho App. 1983), 662 P.2d 1149.

Here, the victim reported the two felony crimes immediately after they occurred. When an officer began following Dow's footprints thirty to forty-five minutes after the crimes were committed, it was reasonable to assume that the suspect, who left the scene on foot, might still be in flight. The officer continu-

9

ously followed the distinctive footprints until he reached the motel room and called for backup, knocking on the door of Dow's motel room less than two hours after the crimes were committed. It was not known whether Dow was aware that the officer, who had been using a bright flashlight, was outside his motel room. It was not known whether Dow was alone, and he was believed to have a gun. In this case, the crimes were serious and the scope of the warrantless search was narrow -- officers obtained a search warrant before conducting more than a "plain view" search of Dow's motel room.

We conclude that exigent circumstances were present in this case as described under Hayden, Santana, and Welsh. We hold that the entry into Dow's motel room was justified under the hot pursuit exception to the warrant requirement under both the Montana and the United States Constitutions. We further hold that the District Court did not err in denying Dow's motions to suppress evidence.

II

Were Dow's constitutional rights violated by application of § 46-13-302(4), MCA (1989), which places the burden of proof upon a defendant moving to suppress evidence?

Section 46-13-302(4), MCA (1989), provided that, in a hearing concerning suppression of evidence, "[t]he burden of proving that the search and seizure were unlawful shall be on the defendant." Dow argues that he was deprived of his right of due process as a result of application of the statute.

10

At the first suppression hearing, Dow's counsel requested that the State present its evidence first. That request was granted and the State proceeded. Dow then presented his evidence and arguments. The record demonstrates that Dow had the opportunity to present all evidence which he desired to have the court consider. In its ruling, the District Court made no reference to burden of proof as between the parties and in addition made no reference to § 46-13-302(4), MCA (1989).

The record demonstrates this is not a "close" case in which the application of a particular burden of proof would affect the outcome. The record is devoid of any substantial evidence to support Dow's theory of suppression. We conclude that there is no reason to consider the constitutional theory presented by Dow.

### III

Was the evidence sufficient to convict Dow of robbery?

Dow maintains that there is insufficient evidence that he obtained unauthorized control over the victim's money. Specifically, he argues that he could not have obtained unauthorized control over the victim's money because she voluntarily gave it to him. He further claims he made no threat which communicated a specific request for money.

Our standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

11

a reasonable doubt. State v. Paulson (1991), 250 Mont. 32, 46, 817 P.2d 1137, 1146. The victim testified that Dow grabbed her from behind, told her he had a gun, and forced her into a dimly-lit alleyway. Under these circumstances, the victim asked Dow what he wanted of her. When she asked if he wanted her money, he said he did. She handed Dow her purse, but he indicated that he wanted only the money, not the whole purse. At his direction, she removed her money from her purse and wallet. When she asked if she could go, he replied, "No, there is one more thing." This statement clearly implies that Dow had two things on his mind when he forced the victim into the alleyway. One thing was to rob her; the "one more thing" was to rape her. Threat is implicit when a lone and unarmed woman on foot is forced into a dimly-lit alley by a man claiming to have a gun and the man then answers "yes" to her question as to whether he wants her money.

We conclude that a rational finder of fact could have found that Dow obtained unauthorized control over the victim's property. We therefore hold that the evidence was sufficient to support Dow's conviction of robbery.

Affirmed.

_____
Justice

We Concur:

_John Conway Harrison_

12

_William E. Hunter_

_Karla M. Gray_

_R. C. McDonough_

Justices

13

December 30, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Philip F. Walsh
Lineberger, Walsh & McKenna
P.O. Box 6400
Bozeman, MT   59771-6400

Hon. Marc Racicot, Attorney General
Paul D. Johnson, Assistant
Justice Bldg.
Helena, MT   59620

A. Michael Salvagni, County Attorney
Marty Lambert, Deputy
615 S. 16th, Law & Justice Center
Bozeman, MT   59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
        Deputy