

DA 08-0208

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 95

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

DEANNE M. SAALE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2007-367
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Lars R. Skjelset, Skjelset & Geer, PLLP, Missoula, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General, Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

            Fred R. Van Valkenburg, Missoula County Attorney, Dwight Schulte,
Legal Intern, Missoula, Montana

Submitted on Briefs:  February 19, 2009

Decided:  March 31, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     The State charged Deanne M. Saale (Saale) with DUI, second offense, after investigating a single vehicle accident.  Saale filed a motion to suppress the evidence obtained as a result of the investigating officers instituting a warrantless entry into her home.  The Justice Court denied the motion and Saale appealed to the District Court.  The District Court affirmed the decision of the Justice Court.  Saale appeals.  We reverse.

¶2     The appeal presents the following issue:  *Did the District Court err in denying Saale's motion to suppress evidence obtained from her home?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     On the early evening of April 26, 2007, Saale was involved in a one vehicle roll-over accident in Clinton, Montana, soon after leaving the Turah Pines Bar.  Various individuals witnessed the accident and exited their vehicles to give aid.  As these individuals helped Saale out of her vehicle, which was on its side, they observed Saale to be highly intoxicated but apparently not seriously injured.  At this point Saale's husband, Chris Saale (Chris), arrived, placed Saale in his truck and drove away from the area.  Law enforcement arrived on scene within minutes of the crash and were informed by witnesses that Saale had left the area.  Subsequent investigation revealed that Saale had gone to her nearby residence.

¶4     Members of the Missoula County Sherriff's Department and the Clinton Rural Fire Department traveled to Saale's house, where they were met by Saale's husband.  Chris refused to allow anyone into his house and refused to bring Saale outside.  On his way to the house, Montana Highway Patrol Trooper Jason Hildenstab (Hildenstab) had

contacted the on-call county attorney, Andrew Paul, in regards to entering the residence without a warrant. Hildenstab was advised officers could enter the house without a warrant due to the exigent circumstances of the driver possibly being intoxicated and trying to elude officers, and due to the prospect she could be severely injured from the accident.

¶5 Hildenstab arrived at the residence and attempted to enter the house with fellow trooper Alex Betz (Betz). Saale's husband refused entry and placed himself in the doorway to block the trooper's entry. At this time he was handcuffed and removed from the area. Hildenstab and Betz then entered the house and found Saale near the front door. Hildenstab reported she looked dazed and appeared intoxicated. Betz removed Saale from the residence and transported her to the scene of the accident.

¶6 Upon arrival at the crash scene Saale refused medical treatment. Betz continued on with his crash investigation, while Saale sat in the back seat of the patrol car. Saale informed Betz she had been driving, but refused to perform any field sobriety tests. A portable breathe test was given and Betz arrested Saale for DUI, second offense.

¶7 The case was prosecuted in Justice Court and Saale moved to suppress the evidence obtained from the warrantless search of the house. The Justice Court denied the motion and Saale appealed to District Court. The District Court upheld the Justice Court's denial of the motion to suppress. The court determined Montana's exigent circumstance warrant exception gave the officers the right to enter Saale's home and take her back to the scene. The court found that the officers had a reasonable belief that it was necessary to see and speak with the defendant about the accident and her potential

3

injuries. The court also determined that it was important to prevent the destruction of evidence—i.e., Saale's blood alcohol level. Saale timely appealed.

## STANDARD OF REVIEW

¶8 We review a district court's denial of a defendant's motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and its interpretation and application of the law is correct. *State v. Goetz*, 2008 MT 296, ¶ 9, 345 Mont. 421, 191 P.3d 489 (citing *State v. Copelton*, 2006 MT 182, ¶ 8, 333 Mont. 91, 140 P.3d 1074).

## DISCUSSION

¶9 *Did the District Court err in denying Saale's motion to suppress evidence obtained from her home?*

¶10 The Fourth Amendment of the United States Constitution and Article II, Section 11, of the Montana Constitution, protects people from unreasonable searches and seizures. *State v. Wakeford*, 1998 MT 16, ¶ 21, 287 Mont. 220, 953 P.2d 1065. Warrantless searches and seizures conducted inside a home are per se unreasonable, subject to a few carefully drawn exceptions. *Wakeford*, ¶ 21. Exigent circumstances are one exception to the warrant requirement. *Wakeford*, ¶ 22. Exigent circumstances are "those that would cause a reasonable person to believe that entry (or other prompt action) was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Wakeford*, ¶ 24. The State bears the heavy burden of showing the existence of exigent circumstances. *Wakeford*, ¶ 24.

4

¶11    The State argues that the potential destruction of evidence—Saale's level of intoxication—constituted an exigent circumstance justifying the officers' warrantless entry into the home. However, we have held that a person's blood alcohol content (BAC) "is not evidence until it exists in a state capable of analysis." *State v. Peplow*, 2001 MT 253, ¶ 25, 307 Mont. 172, 36 P.3d 922. Because a BAC cannot be determined until a person "expels a sample of blood, air or urine, such fluids cannot be considered physical evidence prior to being removed from the body." *Peplow*, ¶ 26. As noted above, one example of exigent circumstances is "destruction of relevant evidence." *Wakeford*, ¶ 24. However, taking into account our holding in *Peplow*, it is illogical to conclude there was an exigent circumstance arising from the potential destruction of evidence, as there was no physical evidence in existence. Without a sample previously extracted from the body, there was simply no physical evidence to destroy. Thus, no exigent circumstance arising from the potential destruction of evidence existed.

¶12    The State relies upon *State v. Deshner*, 158 Mont. 188, 489 P.2d 1290 (1971), in its analysis of the "destruction" of Saale's BAC. After a single car accident, the unconscious defendant in *Deshner* was taken to the hospital and among other procedures was subjected to a blood test. From this blood sample, and other evidence gathered at the scene, the State charged the defendant with a DUI. In response to the defendant's contention that the blood sample was inadmissible, this Court upheld the admission of the blood evidence, reasoning that the officer may have reasonably believed he was confronted with an emergency, as the delay needed to obtain a warrant "threatened the destruction of evidence, i.e., the reduction of the percentage of alcohol in the blood." The

Court further found that "the means and procedures" used to extract the blood were reasonable. *Deshner*, 158 Mont. at 193, 489 P.2d at 1293.

¶13    While *Peplow* did not explicitly overturn *Deshner*, its recent vintage and the factors distinguishing the cases dictate that *Deshner* does not control here.  In *Deshner,* the seizure of blood occurred in a hospital during the course of treatment for Deshner's injuries.  Here, by contrast, the officers entered Saale's home without her consent and against the express instructions of Chris, her husband—a "means and procedure" which would be reasonable only if there were legitimate exigent circumstances.  Moreover, the ostensible justification for the warrantless entry—that there was no time to secure a warrant—was belied by the officers' subsequent actions, as the record reflects that after seizing Saale and returning to the scene, the officers left her in the back seat of a squad car for 45 minutes before even undertaking a PBT analysis.  Thus, we conclude that the officers had neither a lawful nor a practical exigency justifying their warrantless invasion of Saale's home to obtain evidence.

¶14    We likewise reject the District Court's conclusion that the prospect of Saale having sustained serious injuries justified the warrantless entry.  The officers had already been informed by witnesses that Saale did not appear to be seriously injured in the accident, and her husband was evidently aware of her condition.  And again, if the ostensible exigency had been a true concern for her physical well-being, the officers presumably would have taken Saale directly to the emergency room rather than have her sit idly and unattended in the backseat of a patrol car for 45 minutes while they investigated the scene.  This case is readily distinguishable from *Wakeford*, in which we

6

concluded that there was probable cause for a warrantless entry into a hotel room, in light of the occupants' loud arguments, the threat of domestic abuse, and the defendant's evident agitation and concealment of his hands behind his back while talking to officers at the hotel room door. *Wakeford*, ¶ 31. No similar factors existed here to justify the home invasion.

¶15 Finally, we note the defendant's argument that her arrest inside her home was not lawful, pursuant to § 46-6-105, MCA. This statute provides generally that a person may not be arrested in her home at night for a misdemeanor committed at another location, unless it is done pursuant to a warrant. While under normal circumstances, we would rely upon this statute as well as the lack of exigency, we decline to apply the statute here because Saale did not present this argument to the District Court. It is well settled that we will not entertain arguments raised for the first time on appeal. *State v. LaFreniere*, 2008 MT 99, ¶ 11, 342 Mont. 309, 180 P.3d 1161.

## CONCLUSION

¶16 Warrantless searches conducted inside a home are per se unreasonable, subject only to carefully drawn exceptions. *Wakeford,* ¶ 21. We conclude that the State failed to demonstrate the existence of truly exigent circumstances justifying the warrantless entry into Saale's home. Accordingly, we conclude the District Court erred in its interpretation and application of the law to the facts presented in this case.

¶17 We reverse and remand for further proceedings consistent with this Opinion.

/S/ PATRICIA COTTER


We concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART