DA 22-0106

FILED

12/06/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0106

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 238N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DUEY DEAN HONKA,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2019-505
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Brent W. Flowers, Beebe & Flowers, Helena, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney General, Helena, Montana

      Leo J. Gallagher, Lewis and Clark County Attorney, Fallon Stanton, Deputy County Attorney, Helena, Montana

Submitted on Briefs:  October 12, 2022

Decided:  December 6, 2022

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Duey Dean Honka (Honka) appeals from the order of the First Judicial District Court, Lewis and Clark County, denying Honka's motion to suppress. We affirm.

¶3 At around 6:50 p.m., on the evening of October 14, 2019, Helena Police Officer Steven Cornish was dispatched to a local restaurant for a report of an intoxicated male. The reporting party told dispatch that the man urinated in the corner of the restaurant and then drove away in a silver Lexus with Florida license plates. A restaurant employee took a photo of the man behind the wheel. Officer Cornish compared this photo with Honka's Montana identification photo and vehicle registration and determined Honka was the driver. Additionally, Officer Cornish learned that Honka had nine previous convictions for Driving Under the Influence of Alcohol (DUI).

¶4 Officer Cornish went to 814 North Rodney Street, an address Honka had provided to Fish, Wildlife and Parks. Officer Cornish passed through a gate to reach the front door, knocked, and spoke with two residents, both family members of Honka. The residents informed Officer Cornish that Honka lived in a camper behind the house next to the garage and alleyway. At a subsequent suppression hearing, Honka testified that while he slept in

2

the camper, he cooked, ate meals, and used the bathroom and laundry facilities in the main residence. Additionally, he testified that he kept tools and equipment in the garage, had upkept the yard for the previous three years, and maintained the gates and fence. However, with respect to the detached garage only, conflicting evidence was presented regarding Honka's access, with Honka testifying he had a key to the garage while Officer Cornish testified the occupants told him Honka lacked access. Further, Honka testified that he paid rent to reside on the premises and introduced into evidence a rent check containing a notation on the memo line of "$150 lot." When asked by the State what this notation meant, Honka responded that it was for lot rent.

¶5 Officer Cornish testified that during his conversation with the occupants at the front door, he received their permission to pass through the fenced, gated backyard to look for Honka at the camper. He further testified that the residents "didn't have any objections to me walking behind the house." Officer Cornish went through a gate into the fenced backyard and then passed through a separate fence dividing the backyard from the camper. The camper was not within any enclosure, but rather was accessible directly from the public alleyway. Honka was not at the camper, so Officer Cornish left the property and stopped the search after speaking with the family again to request they call him when Honka returned.

¶6 Roughly an hour later, Officer Cornish responded to a call about a serious vehicle accident in the same neighborhood as Honka's residence. A silver Lexus with Florida plates had reportedly crashed head-on into a parked car. The airbags deployed and neither vehicle could be driven. Witnesses reported that the driver was male, inebriated, left the

3

scene on foot, and provided a description of the man consistent with Honka's description. Additionally, witnesses reported that the man complained of neck pain, was injured, and then pointed officers in the direction the man had walked. Officer Cornish and other officers briefly searched the immediate area for the man. Officer Cornish deduced that Honka was the driver from the surrounding circumstances and information he had learned that evening.

¶7     Officer Cornish drove the short distance from the accident scene back to 814 North Rodney Street. When he arrived, he discovered the gates he passed through and re-latched roughly an hour earlier were now unlatched, indicating someone passed through the gates since his earlier visit. He walked through the gates into the fenced backyard and saw Honka sitting on a lawn chair in the yard between the house and the detached garage, in a spot that was not visible from the alley or the front of the house. Officer Cornish took less than ten minutes from the time the accident was reported to locate Honka.

¶8     Officer Cornish observed that Honka appeared dazed and hardly responded when Officer Cornish attempted to communicate with him. Noting Honka's pants were wet, Officer Cornish told Honka "[l]ooks like you wet yourself and you just crashed your car." Honka agreed, responding "I did crash my car." Officer Cornish observed that Honka's eyes were glassy, his speech was slurred, and he smelled of alcohol. Officer Cornish requested an ambulance respond to the alley behind the house after asking Honka multiple times if he was okay. Honka had trouble keeping his balance as he walked to the alley with Officer Cornish to wait for the ambulance. While waiting in the alley, Officer Cornish asked Honka about the crash and about his alcohol consumption. Finally, the house

4

occupants approached Officer Cornish and asked him to retrieve from Honka some car keys belonging to another vehicle.

¶9 Honka was transported by ambulance to the hospital, where he was cleared medically. A warrant was obtained for a blood sample after Honka refused to provide one. Roughly three hours after the crash, Honka's blood alcohol content measured 0.226. Officer Cornish did not give Honka *Miranda* warnings until he was at the hospital.

¶10 The State charged Honka with Aggravated DUI, a felony, in violation of § 61-8-465(1)(a), MCA. The State also charged Honka with a DUI, fourth or subsequent offense, a felony, in violation of § 61-8-401(1)(a), MCA (Count II), and failure to give information at the scene of the accident, a misdemeanor, in violation of § 61-7-106, MCA (Count III).

¶11 Honka filed a motion to suppress evidence gathered during Officer Cornish's warrantless entry into the backyard and a motion to suppress statements given without proper *Miranda* warnings. After a suppression hearing, the District Court issued its order denying Honka's motion to suppress based on an unlawful search and seizure and granting in part and denying in part his motion to suppress based on a *Miranda* violation. The District Court concluded that Honka did not have dominion over, or an expectation of privacy in, the fenced backyard, and as a result, Honka lacked standing to challenge Officer Cornish's entry. The court found Honka merely paid "lot rent" for his camper, which was situated outside the fenced yard, and determined that Honka was not a credible witness. Consequently, the District Court disregarded Honka's testimony that he had dominion over the yard. The District Court then found that even if Honka had standing to challenge the

5

entry, Officer Cornish was given valid consent to pass through the yard—consent which remained in effect when he returned to the house and found Honka. Finally, the District Court concluded that exigent circumstances justified the warrantless entry. The court found Officer Cornish had probable cause to suspect Honka committed a felony based on reports that Honka urinated in a building and drove while intoxicated, then caused a serious car accident and left the scene on foot just blocks from his house. Further, the District Court determined that Officer Cornish was in hot pursuit of Honka. In support of its findings, the District Court noted that there was probable cause that Honka committed one or more felonies, Honka fled the scene on foot, there was concern about his injuries, and Officer Cornish located Honka less than ten minutes after the car accident.

¶12 Turning to Honka's motion to suppress based on *Miranda* violations, the District Court determined that Honka was in custody when Officer Cornish directed him to the alley to wait for the ambulance. At that time, Officer Cornish questioned Honka about his alcohol consumption and the crash without first providing a *Miranda* warning. Accordingly, the District Court excluded Honka's responses. However, the District Court declined to exclude any other statements or evidence for *Miranda* violations.

¶13 On July 22, 2021, Honka pleaded guilty to Aggravated DUI, a felony, in violation of § 61-8-465, MCA. Honka now appeals the District Court's denial of his motion to suppress based on an unlawful search and seizure.

¶14 We review a denial of a motion to suppress to determine whether the district court's findings of fact were clearly erroneous, and we review de novo the district court's interpretation and application of the governing law. *State v. Smith*, 2021 MT 324, ¶ 9,

6

407 Mont. 18, 501 P.3d 398 (citing *State v. Staker*, 2021 MT 151, ¶ 7, 404 Mont. 307, 489 P.3d 489). A finding of fact is clearly erroneous if it is not supported by substantial credible evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record creates a firm conviction that a mistake was made. *Smith*, ¶ 9 (citations omitted).

¶15 On appeal, Honka contends that he had a reasonable expectation of privacy in the fenced yard and that Officer Cornish's entry into the yard without a warrant constituted an unlawful search. The State responds that there were exigent circumstances which justified the search and, alternatively, that Officer Cornish had consent from the residents of the main house to enter the fenced yard.

¶16 Both the Fourth Amendment to the United States Constitution and Article II, Section 11, of the Montana Constitution bar unreasonable searches and seizures. *Smith*, ¶ 11. The Montana Constitution additionally recognizes a right to privacy that "shall not be infringed without the showing of a compelling state interest." Mont. Const. art. II, § 10. Honka argues the District Court erred in denying his motion to suppress because he had a reasonable expectation of privacy in the backyard and no exceptions to the warrant requirement justified Officer Cornish's warrantless entry. We disagree.

¶17 To determine if a search violates the Montana Constitution, we examine "(1) whether the person has an actual expectation of privacy that society is willing to recognize as objectively reasonable, and (2) the nature of the state's intrusion." *State v. Dunn*, 2007 MT 296, ¶ 12, 340 Mont. 31, 172 P.3d 110 (citation omitted). If the person does not have a reasonable expectation of privacy, "there is neither a 'search' nor a

7

'seizure'" under Article II, Section 11 of the Montana Constitution. *State v. Bullock*, 272 Mont. 361, 377, 901 P.2d 61, 71 (1995). If a person has a reasonable expectation of privacy, a search conducted without a warrant is presumptively unreasonable unless it meets one of few delineated exceptions to the warrant requirement. *Smith*, ¶ 24. To determine if a legitimate expectation of privacy exists, we look at circumstances such as "the place of the investigation, the control exercised by the person over the property[,] . . . and the extent to which the person took measures to shield the property from public view, to communicate that entry is not permitted . . . ." *Dunn*, ¶ 13.

¶18 The District Court concluded that Honka's rent checks, with "$150 lot" written on the memo line, indicated Honka merely paid lot rent to park his camper at 814 North Rodney Street rather than paying for use of the entire property. Further, Honka's camper was situated outside the fenced yard, directly accessible from the public alleyway. While Honka's testimony that he used the backyard and house was unrebutted, there was conflicting evidence from Officer Cornish concerning whether Honka had access to the detached garage. The District Court, after considering all this evidence, "did not find Honka to be a credible witness" and concluded that Honka did not have dominion over, or an expectation of privacy in, the fenced yard.

¶19 Turning, first, to Honka's contention that he had a reasonable expectation of privacy in the fenced backyard which was violated when Officer Cornish entered the yard without a warrant, we observe there was no dispute that the area was fenced. Erecting a fence indicates an intent to control or exclude others from accessing the area, except those who are given permission. *See Bullock*, 272 Mont. at 384, 901 P.2d at 76. As such, Officer

8

Cornish correctly requested permission to enter the fenced area. There similarly appears to be no dispute that Honka had permission to use the fenced yard to cook, eat, enjoy, and otherwise recreate, and to traverse the yard to get to the main residence to use the laundry and bathroom, as no controverting evidence was presented. Nonetheless, the court, after considering all this evidence and the witnesses' demeanor and credibility, concluded that "[t]here is no indication, other than Honka's self-serving statements, that he had dominion over . . . the fenced yard adjacent to the home at 814 North Rodney Street." We do "not reweigh the evidence or the credibility of witnesses," but rather "[w]e defer to the district court in cases involving conflicting testimony because we recognize that the court had the benefit of observing the demeanor of witnesses and rendering a determination of the credibility of those witnesses." *State v. Hurlbert*, 2009 MT 221, ¶ 40, 351 Mont. 316, 211 P.3d 869 (citations omitted). Here, while we defer to the District Court's determination that Honka was not credible, it is unnecessary to further assess the District Court's conclusion regarding whether Honka had a reasonable expectation of privacy in the fenced yard, as we conclude exigent circumstances existed that justified the search.

¶20 The presence of exigent circumstances and probable cause is an exception to the warrant requirement. *State v. Dow*, 256 Mont. 126, 129, 844 P.2d 780, 782 (1992). An exigent circumstance is one "that would cause a reasonable person to believe that entry. . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *State v. Wakeford*, 1998 MT 16, ¶ 24, 287 Mont. 220, 953 P.2d 1065 (citation omitted). Exigent circumstances authorize a

warrantless entry "[w]hen officers acting on probable cause and good faith reasonably believe from the totality of the circumstances that the nature of the crime or character of the suspect pose a risk of danger to the arresting officers or third persons . . . ." *Wakeford*, ¶ 27. "Probable cause exists 'if the facts and circumstances within the officer's personal knowledge, or imparted to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense.'" *Wakeford*, ¶ 22 (citation omitted). Additionally, officers may make a warrantless entry if in "hot pursuit" of a fleeing felon and "the exigencies of the situation make that course imperative." *Smith*, ¶ 25 (citing *State v. Sorenson*, 180 Mont. 269, 273, 590 P.2d 136, 139 (1979)).

¶21 The District Court concluded that exigent circumstances justified Officer Cornish's warrantless entry into the fenced backyard. Officer Cornish was aware of the following facts before he entered the backyard and found Honka: witnesses at a restaurant reported Honka was intoxicated and urinated in the building; Honka drove away in a silver Lexus with Florida license plates registered in his name; Officer Cornish became aware that Honka had multiple previous DUIs; witnesses reported a serious car accident in Honka's neighborhood involving a silver Lexus with Florida license plates; the driver's description was consistent with the earlier description provided by witnesses at the restaurant; witnesses reported the driver was inebriated and "breathing . . . but he's not ok"; the driver left the scene of the accident on foot; and Officer Cornish arrived at 814 North Rodney Street less than ten minutes after the accident was reported. We agree with the District Court that there was probable cause that Honka had committed a felony.

¶22 Honka argues that Officer Cornish was not in "hot pursuit" because Honka fled the accident scene before Officer Cornish arrived, while the doctrine requires an immediate chase of a fleeing suspect. We disagree. In *Dow*, we held that a warrantless entry into a defendant's motel room was justified under the hot pursuit exception. There, a defendant was reported to have committed two felonies. The officer arrived on scene after the defendant fled, then followed fresh tracks in the snow from the crime scene to a motel room registered in the defendant's name. The officer arrested the defendant nearly two hours after the initial report. We first concluded that probable cause existed to arrest the defendant, then examined whether exigent circumstances were present. *Dow*, 256 Mont. at 129, 132, 844 P.2d at 783-84. Although the officer pursued the defendant for nearly two hours, we nevertheless held this was a "hot pursuit" because the officer followed the defendant's clear physical trail away from the crime scene, the officer started following the footprints less than an hour after the crimes occurred, the crimes were felonies, and the warrantless search was narrow in scope. *Dow*, 256 Mont. at 131-32, 844 P.2d at 784.

¶23 Like in *Dow*, Officer Cornish's entry into the backyard was justified under the hot pursuit exception to the warrant requirement. Officer Cornish had probable cause that Honka had committed one or more felonies, ample evidence connected Honka to an escalating series of crimes that culminated in a serious car crash, Officer Cornish located Honka quickly in less than ten minutes, and Honka's injuries and physical well-being after the crash caused Officer Cornish concern.

¶24 Honka relies on *State v. Saale*, 2009 MT 95, 350 Mont. 64, 204 P.3d 1220, to argue that suspected injuries are not exigent circumstances justifying warrantless entry. In *Saale*,

11

we held the prospect of a defendant having sustained serious injuries did not justify a warrantless entry because witness reports indicated the injury was not serious and the defendant's husband was aware of the defendant's condition yet still refused to allow officers to enter their home. *Saale*, ¶ 14. Moreover, the officers themselves did not treat the defendant's injuries as serious because "if the ostensible exigency had been a true concern for [the defendant's] physical well-being, the officers presumably would have taken [the defendant] directly to the emergency room rather than have her sit idly and unattended in the backseat of a patrol car for 45 minutes while they investigated the scene." *Saale*, ¶ 14. The circumstances in *Saale* are not analogous to this case. Here, witnesses to the car accident reported Honka had potentially serious injuries. Further, Officer Cornish prioritized Honka's physical condition and well-being. He quickly requested an ambulance to the alley for Honka after noting Honka appeared to have urinated on himself, was dazed, and had slurred speech, and Honka was transported to the emergency room without delay. We agree with the District Court that Honka's potentially serious injuries, the existing probable cause that he committed a felony, and the speed at which Officer Cornish pursued Honka constituted exigent circumstances justifying the warrantless entry into the fenced backyard.[1]

¶25    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

---

[1] Because we conclude exigent circumstances justified the warrantless entry, we will not address Honka's arguments as to the validity of the occupants' consent.

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶26   Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE