No. 97-067

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 16

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DANIEL ALLAN WAKEFORD
Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Steven M. Hudspeth, Attorney at Law, Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson, Assistant
Attorney General, Helena, Montana

Brant Light, Cascade County Attorney; Jeffrey Mora, Deputy Cascade
County Attorney, Great Falls, Montana

Submitted on Briefs: November 20, 1997

Decided:    January 30, 1998
Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Daniel Allan Wakeford was charged by information on June 27, 1995, with the
offenses of criminal possession of dangerous drugs, a felony, and misdemeanor
possession of drug paraphernalia.  Wakeford filed a motion to suppress physical evidence
found after a warrantless search of his motel room.  The Eighth Judicial District Court,

Cascade County, denied the motion. Wakeford entered into a plea agreement with the State in which he agreed to plead guilty to the charge of felony criminal possession of dangerous drugs and the State agreed to dismiss the misdemeanor possession of drug paraphernalia. Wakeford reserved the right to appeal from the District Court's denial of his motion to suppress. The District Court sentenced Wakeford to the Department of Corrections for a term of five years with the recommendation that he be placed in a prerelease center. Wakeford appeals from the sentence and judgment of the District Court and from the order denying his motion to suppress. We affirm.

¶2     The only issue raised on appeal is whether the District Court erred in denying Wakeford's motion to suppress evidence in which Wakeford argued that the evidence found in his motel room was gathered pursuant to an illegal search and seizure.

FACTUAL AND PROCEDURAL BACKGROUND

¶3     At 9:44 a.m. on June 4, 1995, Officers Pat Brickman and Robert McClellan of the Great Falls Police Department separately responded to the O'Hare Manor Motel in Great Falls on a dispatch call concerning a reportedly despondent and possibly suicidal male in Room 119.

¶4     After speaking with a desk clerk, they approached Room 119, where Wakeford was staying and heard voice of a male and female arguing inside. McClellan heard what he considered was a loud and heated argument. Both officers were concerned that they might be confronting a domestic abuse situation.

¶5     One of the officers knocked on the door and Wakeford responded by asking through the door who was there. The officers identified themselves and asked Wakeford to open the door. Wakeford initially refused to open the door, but then opened it partially after talking with the officers.

¶6     Wakeford opened the door sufficiently for the officers to see his face. Brickman noted that Wakeford's eyes were dilated and he was breathing rapidly. Wakeford appeared angry and upset. Brickman testified that he could see only part of Wakeford's body and could not see his hand which was behind the door. McClellan stated that he could not see Wakeford's hands at all. Neither officer heard anything coming from inside the motel room.

¶7     The officers told Wakeford that they were concerned and wanted to make sure that the female in the room was fine. Wakeford told the officers that he had been fighting with Justine Degele, but insisted that she was fine and did not open the door any further. The officers thought it was necessary to check on Degele despite Wakeford's assurances. The officers were also concerned for their own safety, as Wakeford remained partially hidden behind the door and they could not see if his hand held a weapon.

¶8     Once again, the officers told Wakeford that they needed to check on the woman in the room. He stepped back and they entered the room. The officers found Degele on the bed and spoke with her to make sure she was alright. She admitted that she had been fighting with Wakeford but stated that she was fine.

¶9    However, upon entering the room, the officers saw in plain view, on the counter and on the floor, a spoon with white powdery residue, a folded bindle, some cotton material and a dollar bill rolled up into a tube.  McClellan then arrested Wakeford for possession of drug paraphernalia.  Wakeford asserted his Miranda rights by not answering any questions. He did not consent to a search of his motel room and instead informed the officers that they needed to get a search warrant.  The officers called for assistance and another officer, Sergeant Lockerby, arrived and conducted a field test on the residue.  Wakeford was then transported to jail.

¶10   The officers secured the room and left.  They went to the Cascade County Attorney's  office to obtain a search warrant.  At this time, McClellan was able to contact Mike Gersack, Wakeford's probation officer.  Gersack told McClellan that Wakeford's probation agreement contained a clause that would allow the search of Wakeford's room upon a reasonable suspicion that he may have violated his parole.  Gersack then gave the officers permission to search Wakeford's motel room.  With Gersack's permission to search Wakeford's room, the officers abandoned their efforts to obtain a search warrant.

¶11   The officers returned to the room and seized the items they noticed earlier.  The residue turned out to be amphetamine.  McClellan returned to jail and wrote Wakeford a complaint for felony possession of dangerous drugs.

¶12   On June 27, 1995, Wakeford was charged by information in the Eighth Judicial District Court, Cascade County, with violations of: (1) õ 45-1-102(1), MCA (1993), felony  criminal possession of dangerous drugs; and (2) õ 45-10-103, MCA (1993), misdemeanor possession of drug paraphernalia.

¶13   On December 4, 1995, Wakeford filed a motion to suppress.  Wakeford sought to suppress all of the evidence that the officers gathered after entering Wakeford's motel room without a search warrant.  An evidentiary hearing on the motion was held on February 26, 1996.  On April 18, 1996, the District Court denied Wakeford's motion to suppress.

¶14   On July 16, 1996, Wakeford entered a plea of guilty, pursuant to § 45-1-102(1), MCA (1993), to the offense of felony criminal possession of drugs.  The State agreed to dismiss the charge of misdemeanor possession of drug paraphernalia.  Wakeford reserved the right to appeal from the order denying his motion to suppress.

¶15   On October 11, 1996, the District Court sentenced Wakeford to the Montana Department of Corrections for a term of five years, with the recommendation that Wakeford was to be placed in a prerelease center.  This sentence was to run concurrent with Wakeford's sentence in another Cascade County case.  On October 25, 1996, the District Court's written judgment and sentencing order was filed.

¶16   On December 20, 1996, Wakeford filed a notice of appeal.  Wakeford appeals from the sentence and judgment of the District Court and from the order denying his motion to suppress evidence.

DISCUSSION

¶17  Did the District Court err in denying Wakeford's motion to suppress evidence in which Wakeford argued that the evidence found in his motel room was gathered pursuant to an illegal search and seizure?

¶18  The standard of review for a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law.  State v. Flack (1993), 260 Mont. 181, 185-88, 860 P.2d 89, 92-94.

¶19  On appeal, Wakeford challenges the authority of the officers to enter his motel room to conduct a warrantless search.  Wakeford does not challenge the seizure of the drug paraphernalia, which the officers observed in plain view, or the validity of the subsequent search of the motel room, which was authorized by Wakeford's probation officer.  Wakeford argues that the officers had no justification for conducting a warrantless search by entering his motel room and, therefore, all evidence seized from the room should be suppressed as fruits of an illegal entry.

¶20  The State counters that the officers were justified in entering his motel room without a warrant under the "exigent circumstances" exception to the general prohibition against warrantless searches.

¶21  The Fourth Amendment of the United States Constitution, and Article II, Section 11, of the Montana Constitution, affords all persons the freedom from unreasonable searches and seizures. Warrantless searches and seizures conducted inside a home are per se unreasonable, subject to a few carefully drawn exceptions.  State v. Rushton (1994), 264 Mont. 248, 870 P.2d 1355.  The same protection against unreasonable searches and seizures that applies to private residences extends to guests in motel rooms.  State v. Dow (1992), 256  Mont. 126, 844 P.2d 780.  In Stoner v. California (1964), 376 U.S. 483, 490, 84 S. Ct. 889, 893, 11 L. Ed. 2d 856, 861, the United States Supreme Court held that:

> No less than a tenant of a house, or the occupant of a room in a boarding house, McDonald v. United States, 335 U.S. 451, 69 S. Ct. 191, 93 L. Ed. 153 [1948,] a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. Johnson v. United States, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 [1948].

¶22  One exception to the warrant requirement is where exigent circumstances and probable cause are present.  Warden v. Hayden (1967), 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782; State v. Sorenson (1979), 180 Mont. 269, 590 P.2d 136.   Probable cause exists "if the facts and circumstances within the officer's personal knowledge, or imparted to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense."  State v. Schoffner (1991), 248 Mont. 260, 264, 811 P.2d 548, 551.

¶23  In upholding the warrantless search of Wakeford's motel room, the District Court relied on the "exigent circumstances" exception to the warrant requirement.  The exigent circumstances doctrine provides that a "warrantless entry by law enforcement officials may be legal when there is a compelling need for official action and no time to secure a warrant."  Michigan v. Tyler (1978), 436 U.S. 499, 509, 98 S. Ct. 1942, 1949, 56 L.

Ed. 2d 486, 498.

¶24  Exigent circumstances are "those circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts."  United States v. McConnery (9th Cir. 1984) (en banc), 728 F.2d 1195, 1199 cert. denied (1984), 469 U.S. 824, 105 S. Ct. 101, 83 L. Ed. 2d 46.  The State bears the heavy burden of showing the existence of exigent circumstances.  Welsh v. Wisconsin (1984), 466 U.S. 740, 749-50, 104 S. Ct. 2091, 2097, 80 L. Ed. 2d 732, 743.  It can meet that burden only by "demonstrat[ing] specific and articulable facts to justify the finding of exigent circumstances."  United States v. Driver  (9th Cir. 1985), 776 F.2d 807, 810.  The State must establish that the circumstances, as they appeared at the moment of entry, would lead a reasonable officer to believe that someone in the house or motel room required immediate assistance.  United States v. Salava (7th Cir. 1992), 978 F.2d 320, 324.

¶25  We agree with the District Court that exigent circumstances existed in this case.  The police responded to a dispatch that Wakeford was possibly suicidal and might harm himself.  After checking with the motel clerk at the front desk, the officers approached Wakeford's room.  In the hallway, they heard two voices, male and female, arguing.  Based on their experience, the officers believed that they were about to confront a potential domestic abuse situation.

¶26  When the officers spoke to Wakeford at the door, their concern over the situation increased.  Wakeford held the door slightly ajar, preventing the officers from seeing inside the room and from observing whether Wakeford was holding anything in his hands.  The officers observed that Wakeford was sweating, breathing heavily, and his eyes were dilated.  Wakeford admitted that he had been fighting with Degele but refused to allow the officers to check on her safety.  The officers did not see or hear anything from Degele when talking to Wakeford at the door.

¶27  When officers acting on probable cause and good faith reasonably believe from the totality of the circumstances that the nature of the crime or character of the suspect pose a risk of danger to the arresting officers or third persons, exigent circumstances justify a warrantless entry, search, or seizure of the premises.  See United States v. Gooch (9th Cir. 1993), 6 F.3d 673, 679; United States v. Gardner (9th Cir. 1980), 627 F.2d 906, 910-12. Although Wakeford assured the officers that he was not suicidal and that everything was fine in the room, it was reasonable for the officers to believe that exigent circumstances existed which required their immediate entry into the room to ensure the safety of the occupants of the room and themselves.  The officers had not heard anything from the female, Degele, who was inside the motel room.  Furthermore, the officers were concerned because they could not see if Wakeford,  partially hidden behind the door, was holding a weapon in his hand.  The officers told Wakeford that they needed to check on Degele before they could leave and he stepped aside.  In the room, the officers spoke to Degele.  She stated that she and Wakeford had been arguing but that she was fine.  The officers noticed no evidence of physical injuries to her and she did not appear to be in any danger.  After checking on Degele, the officers then saw drug paraphernalia in the room, providing probable cause to believe that an offense was being committed justifying Wakeford's arrest.

¶28 Wakeford argues that the District Court failed to conclude that probable cause existed before the search. He asserts that probable cause must first exist before exigent circumstances can allow a warrantless search. He states that once the officers arrived in response to the dispatch call and saw that he was fine, it was unreasonable for them to conclude that Degele was in need of immediate assistance because Wakeford did not immediately allow the officers to check on her.

¶29 In response, the State argues that a showing or finding of probable cause of criminal activity is not required to justify a warrantless entry under exigent circumstances. The State contends that as long as the officers had a reasonable belief that Wakeford or Degele needed their assistance, it was not necessary for the officers to have probable cause to believe that Wakeford had committed an offense in order for the District Court to find that the officers' search was lawful.

¶30 As stated above, all warrantless searches are presumed unreasonable unless an exception to the warrant requirement exists. Ruston, 264 Mont. at 257, 870 P.2d at 1361. An exception to the warrant requirement is where exigent circumstances and probable cause are present. Dow, 256 Mont. at 129, 844 P. 2d at 782; State v. Kao (1985), 215 Mont. 277, 281, 697 P.2d 903, 906.

¶31 In this case, the Court concludes that probable cause did exist. The officers responded to a dispatch call stating that Wakeford was despondent. In the hallway of the motel, the officers heard loud voices engaged in what they believed to be a potential domestic abuse situation. When Wakeford came to the door, he appeared agitated, he was breathing heavily and sweating, and only partially opened the door, concealing his hands from the officers. The officers were not able to see or hear the female with whom Wakeford had been arguing and could reasonably assume that she had suffered from some injury or violent act. Thus, in these circumstances, probable cause existed that Wakeford may have committed domestic abuse against Degele that justified a warrantless search of the motel room.

¶32 We conclude that the District Court did not err in finding that the officers' initial entry into the motel room was authorized as a warrantless search due to exigent circumstances. We further conclude that the officers did have probable cause to believe that Wakeford had committed an offense before conducting the warrantless search.

¶33 Affirmed.

/S/ JIM REGNIER

We concur:

/S/ J. A. TURNAGE
/S/ JAMES C. NELSON
/S/ WILLIAM E. HUNT, SR.
/S/ TERRY N. TRIEWEILER