No. 97-072

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 109


STATE OF MONTANA,

Plaintiff and Respondent,

v.

PHILLIP EARNEST KEATING,

Defendant and Appellant.


APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
Honorable Jeffrey M. Sherlock, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

David F. Ness, Missoula, Montana

For Respondents:

Honorable Joseph P. Mazurek, Attorney General; C.
Mark Fowler, Assistant Attorney General, Helena, Montana; Mike McGrath, County Attorney;

Vicki Frazier, Deputy County Attorney, Helena, Montana


Submitted on Briefs: March 26, 1998

Decided: May 5, 1998
Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1    Phillip Earnest Keating appeals his conviction, by jury trial in the First Judicial District Court, Lewis and Clark County, of two counts of possession of dangerous drugs (one felony and one misdemeanor), and two counts of misdemeanor possession of drug paraphernalia.  We affirm.

¶2    The issue is whether the District Court erred in denying Keating's motion to suppress evidence.

¶3    At 3:30 a.m. on June 10, 1995, a Helena, Montana, city police officer on routine patrol noticed a small pickup truck with its dome light on and passenger door open parked next to Uncle Pete's Pawn Shop.  The officer pulled over to investigate.  While he was doing so, a man walked out of the pawn shop holding several fishing items.  Recognizing the man as Fabian Gong, who was then under the supervision of a local probation officer, the police officer asked him what he was doing.  Gong replied that he was doing his laundry.

¶4    A second Helena police officer arrived.  Gong, who appeared worried and near tears, then told the officers that he worked at the pawn shop and had a key.  He said that he and the owner, Phillip Keating, were doing inventory.  Under the circumstances, the second officer decided to verify Gong's statement.  He went to the open front door of the pawn shop and  identified himself loudly as a police officer.  He then entered the store, in which an overhead light was turned on, with his gun drawn and a flashlight in his other hand.  As he entered, he noticed a male whom he recognized as Keating standing behind the counter with his back toward the door.

¶5    Keating turned around with a semiautomatic pistol in his hand, aiming it at the police officer.  He loudly ordered the officer to leave the store because he had no right to be there.  Keating continued to shout at the officer for several minutes while the officer repeatedly ordered Keating to put the gun down.  Finally, Keating walked out from behind the counter and knelt down in compliance with the officer's orders.  Once Keating was on the floor, a third officer who had arrived on the scene handcuffed him.  Meanwhile, outside, Gong had again changed his story about what he was doing at the pawn shop at 3:30 a.m., now explaining that he and Keating were gathering items for a flea market sale they were having the next morning.

¶6    One of the officers conducted a protective sweep of the premises, looking for other persons and for weapons.  He found Keating's pistol on a counter.  Also on the counter were two razor blades and a scale with a white powder residue and what appeared to be marijuana debris in the tray.  The officers found a four-inch long plastic straw in the left front breast pocket of Keating's jacket.  Keating, with whom all of the officers were acquainted, was behaving out of character, "very hyper" and "very agitated."

¶7    Keating was transported to the local hospital where, pursuant to a warrant, his blood was tested for drugs.  He was charged with felony assault and four drug offenses:  misdemeanor possession of dangerous drugs

(marijuana), felony possession of dangerous drugs (methamphetamine), and two counts of misdemeanor possession of drug paraphernalia (the scale and the straw). The jury was unable to reach a verdict on the felony assault charge but found Keating guilty on all four drug charges.

DISCUSSION

¶8 Did the District Court err in denying Keating's motion to suppress evidence?

¶9 Before trial, Keating moved the District Court to suppress all evidence found within Uncle Pete's Pawn Shop and to dismiss the charges against him. His motion was based upon his argument that his arrest was made without probable cause and in violation of his statutory and constitutional rights; that a search was illegally conducted and that it was conducted without probable cause, without a search warrant and in violation of his statutory and constitutional rights; and that exigent circumstances did not justify the police officers' entry into his place of business.

¶10 Keating's trial counsel acquiesced in the court's decision to consider the suppression issue based on the documents filed with the District Court, which consisted of police reports and the parties' briefs. Based upon its review of those documents, the court found that there was probable cause for the officers to believe that a burglary was going on at Uncle Pete's Pawn Shop and that it was reasonable for them to enter the building in order to protect the owner's property. The court held that the police reasonably believed that a burglary was in progress at the pawn shop and that their subsequent actions were reasonable and appropriate under all the facts and circumstances. After the decision was rendered, Keating moved for reconsideration and for an evidentiary hearing. The court's refusal to grant that motion is the basis for this appeal.

¶11 This Court's standard of review of the denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether the findings were correctly applied as a matter of law. State v. New (1996), 276 Mont. 529, 533, 917 P.2d 919, 921.

¶12 In general, a criminal defendant is entitled to a hearing on a suppression motion. See City of Helena v. Lamping (1986), 221 Mont. 370, 719 P.2d 1245. However, no evidentiary hearing is required on a motion to suppress when the parties have stipulated to the facts. State v. Chatriand (1990), 243 Mont. 375, 378, 792 P.2d 1107, 1109. In his motion for reconsideration, Keating did not identify any facts which might affect the validity of the court's ruling.

¶13 Keating now asserts that he pointed out, in both his motion to suppress and his motion for reconsideration, contested issues of fact which made it necessary to hold an evidentiary hearing. For one, he states that the police "knew" that Gong was assisting him with inventory prior to entry into the pawn shop and that the pickup truck outside the pawn shop belonged to him. But there is nothing to indicate that Gong told the officers, or that they were otherwise aware before they entered the pawn shop, that the pickup belonged

to Keating, who had recently purchased it used. Also, as described above, Gong's statements about what he was doing at the pawn shop at 3:30 a.m. were inconsistent.

¶14 Keating further asserts that before the police entered the pawn shop, he yelled out, "whoever is out there stay out, I've got a gun." While he so testified at trial, this information was not before the court when it decided the motion to suppress. Moreover, as with his claim that he was blinded by the officer's flashlight when the officer entered his store, Keating does not explain what effect a shouted threat from an unidentified person would have on a determination of whether the officer was justified in entering the pawn shop.

¶15 The propriety of the denial of the motion to suppress must be based upon the factual evidence before the District Court when it decided the motion. In State ex rel. Zander v. District Court (1979), 180 Mont. 548, 553, 591 P.2d 656, 659, this Court held that a warrantless entry is appropriate under the exigent circumstances doctrine when prudent officers are warranted in their belief that a felony has been attempted or committed and in concluding that a prompt entry was necessary to protect property and to detect any suspect inside. Further, any items incidentally discovered in plain view can be seized without a search warrant.

¶16 In Zander, a neighbor reported that someone was tampering with the kitchen window in the Zanders' trailer home. A police officer dispatched to the residence confirmed with the neighbors that the Zanders were not home and that the door was always locked if they were away. The officer noticed a light on in the trailer, but could see no one inside and no signs of forced entry. He tested the door and found it unlocked. When no one answered his knock, the officer entered and began searching for a possible burglar. In his search of the trailer, he discovered marijuana plants growing in a room where a light was on. This Court held that the officer's entry into the trailer was proper and justified, and concluded that the discovery of the marijuana plants was lawful under the plain view doctrine. Zander, 180 Mont. at 553, 591 P.2d at 659.

¶17 This Court has recently reaffirmed that when officers acting on probable cause and good faith reasonably believe from the totality of the circumstances that the nature of the crime or characteristics of the suspect pose a risk of danger to the arresting officer or third persons, exigent circumstances justify a warrantless entry, search, or seizure of the premises. State v. Wakeford, 1998 MT 16, ___ P.2d ___, 55 St.Rep. 56. In Wakeford, we upheld a warrantless entry into a motel room. Police investigating a report that an occupant of the room was possibly suicidal had heard two people arguing inside, a male and a female. Wakeford answered their knock, holding the door only slightly ajar. He was sweating and breathing heavily, his eyes were dilated, and his hands were hidden. While he admitted that he had been fighting with a woman inside the room, he refused to allow the officers to check on her safety. The officers' subsequent entry was justified under the exigent circumstances doctrine because it was necessary to check on the female's safety and to see if Wakeford had a gun in his hand. Drug paraphernalia which the officers thereafter discovered in plain view within the room

was admissible into evidence under the plain view doctrine despite the absence of a search warrant. Wakeford, ¶ 27.

¶18 In this case, the evidence before the court in relation to the motion to suppress consisted of an affidavit in support of a subsequent application for a search warrant and police reports, including three written reports of the incident written by the three police officers involved. One officer documented the following reasons justifying the initial entry: "the involved suspicious vehicle with vehicle door nearest business in open position, time frame involved being 0330 Hrs., which is a normally 'closed' hour for this business, individual identified as Fabian Gong exiting business with merchandise in hand and entry door to business in open position."

¶19 Other police reports filed with the court documented that Helena police officers had responded to burglar alarm calls at Uncle Pete's in the past, and that Keating had filed complaints about crime in the neighborhood. When he was found outside the pawn shop, Gong appeared worried and near crying and gave several different stories as to what he was doing. The police officers' reports document the following additional reasons justifying a "sweep" of the store: when he finally came out from behind the counter, Keating did not hand over (or have on his person) the gun with which he had threatened the uniformed officers; Keating's behavior (he "appeared to be pacing rapidly in the counter area, yelling back towards officers irrational statements and unintelligible statements"); and, before he gave up, Keating "ran to the west side of the counter. It appeared that Keating was attempting to conceal something." The scale was discovered in plain view on the counter.

¶20 In denying the motion to suppress, the District Court wrote:

> The officers were faced with an individual with a known criminal record leaving a business at 3:30 a.m. He had a suspicious story and appeared near tears to the officers. The officers then noticed that the door of the business was open. The officers certainly had every right to enter the building to make sure that it was secure and that no burglary was going on. These officers would certainly be under a great deal of criticism if they had merely closed the door and walked away without any further investigation.

The facts stated above by the District Court are supported by substantial evidence and are not otherwise clearly erroneous.

¶21 In further applying the exigent circumstances doctrine, the District Court said:

> Here, the officers could certainly prudently believe that a felony had been, or was being, committed at this place of business. This is near an area where the police have had many reports of criminal activity; it is 3:30 a.m.; they have an individual coming out of a store carrying items that certainly seem strange for one going on a laundry trip; and they have the door of the building left wide open. It was certainly reasonable for the officers to go inside.

Further, once the officers were confronted by Keating pointing a gun at them, they were certainly well within their rights to take protective measures and to ultimately secure Keating. They had a right to go pick up the gun that Keating was pointing at them and the evidence that was seized thereafter, the scales and the residue thereon, were in plain sight.

We agree with the District Court. We hold that the Helena police officers were justified by the exigent circumstances in making a warrantless entry into Uncle Pete's Pawn Shop and in then conducting a plain view sweep of the shop after Keating yielded to them. The District Court did not err in denying the motion to suppress evidence seized from the pawn shop.

¶22 Affirmed.

/S/ J. A. TURNAGE

We concur:

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ WILLIAM E. HUNT, SR.