750 A.2d 166 (2000)
330 N.J. Super. 527
STATE of New Jersey, Plaintiff-Appellant,
v.
Anthony FARETRA, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 4, 2000.
Decided May 8, 2000.
*167 Donald C. Campolo, Assistant Attorney General, Acting Essex County Prosecutor, for plaintiff-appellant (Debra G. Lynch, Special Deputy Attorney General, of counsel and on the brief).
Furman L. Templeton, Jr., West Orange, for defendant-respondent.
Before Judges PRESSLER, CIANCIA and ARNOLD.
The opinion of the court was delivered by ARNOLD, J.S.C. (temporarily assigned).
The State appeals, on leave granted, from an order granting the motion of defendant Anthony Faretra for suppression of evidence seized by the police following the warrantless entry of a garage leased by him which the police had reason to believe had just been burglarized. We reverse.
In his opinion dated November 4, 1999, the motion judge made the following findings of fact:
On March 22, 1997 at 1:00 am, while on patrol, Officer Edward Sousa of the Bloomfield Police Department was flagged down at the corner of Bloomfield and Belmont Avenues by an individual named Angelo DiGiacomo. Mr. DiGiacomo advised Officer Sousa that another party had broken into a garage located at 5 Columbus Street and left that location carrying a cardboard box. Mr. DiGiacomo then pointed down the street at the individual to which he was referring. Officer Sousa observed the individual to whom Mr. DiGiacomo was referring and stopped him at the corner of Bloomfield Avenue and North 10th Street. Upon *168 walking up to the individual, later identified as Louis Gillick, Officer Sousa observed a cardboard box which Mr. Gillick was carrying. He noticed that the box was filled with car radios. Officer Sousa questioned Mr. Gillick about where he had found the radios. Mr. Gillick had responded that he found the box on the street corner, and then advised Officer Sousa that his brother worked in the garage. Since Officer Sousa had observed Mr. Gillick walking down the street with the box in hand, he determined that Mr. Gillick was a suspect in the burglary of the garage that Mr. DiGiacomo had previously discussed with Officer Sousa. At that time, Officer Sousa read Mr. Gillick his Miranda rights and Mr. DiGiacomo identified Mr. Gillick as the individual he saw leaving the garage. Officer Sousa then brought Mr. Gillick back to the exterior of the garage and Mr. Gillick was identified by a second witness, Mr. Edgar Villaneuva. Mr. Villaneuva had advised Officer Sousa that he had seen the light on the garage and had seen one person walking around inside. Both witnesses, Messrs. DiGiacomo and Villaneuva, lived at 7 Columbus, next door to the subject garage.
After Mr. Gillick was placed under arrest for burglary and theft, Officer Sousa went to the front of the garage. He observed that a door panel to the garage door had been pushed in, leading him to determine that there had been a forcible entry into the building. Officer Sousa, accompanied by Officers Dwyer and Motsch, who came to the scene pursuant to a burglary in progress call, entered the garage in search of additional suspects. Upon entering the garage, the officers observed a large number of car parts from what appeared to be newer model cars. The search did not produce any additional suspects and did not produce any cars being repaired. Based on Officer Sousa's six-month experience with the Auto Theft Task Force and his fifteen (15) years with the Bloomfield Police Department, he believed that the parts were stolen and that the garage was being used as a "chop shop". Officer Sousa then wrote down the Vehicle Identification Numbers (VINs) for three (3) of the car doors which he observed in the garage and radioed those numbers to his dispatcher, who ran the numbers through the NCIC. As a result of the NCIC search, the dispatcher advised Officer Sousa that the car doors were from cars that had been reported stolen. Upon getting the results, Officer Sousa secured the garage as a crime scene and obtained a search warrant based on the information that he had gained from his entry into the building.
A few hours after the initial incident, at approximately 8:00 am on March 22, 1997, a warrant to search the garage at 5 Columbus, Bloomfield, New Jersey, was obtained from Municipal Court Judge John Bukowsky, Officer Sousa participated in the search of the garage pursuant to the warrant and the auto parts that were housed at that location were seized. Additionally, during the search, a tool box which was believed to contain "other property connected with the crime of chop shop operation," as detailed in the warrant, was searched. The "other property" referenced in the warrant was interpreted by Officer Sousa to mean registrations, licenses, insurance policies and any other items that would show ownership of the cars to which the car parts went. In one of the drawers of the tool box, Officer Sousa found license plates which had been folded and placed in a small bag through which the contents could be seen. In continuing to search the tool box, Officer Sousa removed a black pouch from the tool box and, believing that other folded license plates and pieces of identification could be found inside the pouch, Officer Sousa opened the pouch and found a white powdery substance believed to be heroin along with green vegetation believed to be marijuana. These items *169 were later tested and proved to be controlled dangerous substances.
The motion judge suppressed all evidence seized concluding that Officer Sousa did not have an objective basis to believe that another suspect was in the garage who could "present a danger to the police officers or to the public." The motion judge rejected as a basis for the warrantless search testimony by Officer Dwyer, who accompanied Officer Sousa into the garage, in which he stated, "[w]hen you have one [suspect], you look for two. When you find two, you look for three." The motion judge found that this statement "although based on ten (10) years of experience with the Bloomfield Police Department, when viewed objectively, is not sufficient for the court to conclude that the warrantless entry was reasonable under the exigent circumstances exception." In addition, the court noted that the United States Supreme Court had recently again rejected a crime scene exception to the Fourth Amendment's warrant requirement. Flippo v. West Virginia, ___ U.S. ___, 120 S.Ct. 7, 145 L.Ed.2d 16 (1999).
We cannot agree with the motion judge's reasoning. Certainly, the Fourth Amendment to the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution proscribe all unreasonable searches and seizures. It is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585, (1967). Here, we find that the police entry without a warrant was pursuant to an established and well delineated exception to the warrant requirement that the police may enter private premises where the police reasonably believe that the premises have recently been or are being burglarized. The motion judge also suppressed the evidence on the basis that a so-called crime scene exception has been rejected by the United States Supreme Court. We hold that the rejection of a crime scene exception does not affect the authority of the police to enter private premises when the police reasonably believe that a crime is taking place or has just taken place, for the limited purposes of rendering aid to a possible victim of the crime or seeking or apprehending the perpetrators or taking any necessary steps to secure the premises.
The established and well-delineated exception to the requirement for a warrant in circumstances involving recently burglarized premises is discussed in numerous cases which we set forth in ascending chronological order. See United States v. Estese, 479 F.2d 1273 (6th Cir.1973) (where police responded to a radio call reporting breaking and entering at defendant's apartment, found the door to the apartment pried open, and entered to search for a burglar, defendant's motion to suppress a sawed-off shotgun found in plain view, held properly denied); State ex rel. Zander v. District Court, 180 Mont. 548, 591 P.2d 656 (1979) (where neighbor reported to police that someone was tampering with window of trailer home and said trailer door always locked, and officer found door unlocked, entry "to protect the property" was deemed proper); State v. Jennings, 461 A.2d 361 (R.I.1983) (entry by police lawful where police found apartment door ajar and apartment appeared to have been ransacked); Mann v. Cannon, 731 F.2d 54 (1st Cir.1984) (police could enter unoccupied house after reports of juvenile breaking into house to obtain drugs); United States v. Dart, 747 F.2d 263 (4th Cir.1984) (police properly entered units of self-storage warehouse complex upon finding locks sawed off and doors forced open); People v. Duncan, 42 Cal.3d 91, 227 Cal.Rptr. 654, 657, 720 P.2d 2 (1986) (where neighbor reported burglary and officer who responded saw open window and TV and other valuable property inside, it "would have been poor police work indeed for an *170 officer to fail to investigate under circumstances suggesting a crime in progress."); Carroll v. State, 335 Md. 723, 646 A.2d 376, 382 (1994) (police can enter where there is "probable cause to believe that burglary is either in progress or recently has been committed,"); United States v. Tibolt, 72 F.3d 965 (1st Cir.1995) (police lawfully entered premises after security alarm had been activated, found unlocked door on rear deck but no response to efforts to communicate with anyone who might be inside); State v. Keating, 288 Mont. 447, 958 P.2d 690, 694 (1998) (upholding lower court's conclusion that when officer on routine patrol saw individual with known criminal record leave a business at 3:30 a.m., found his explanation suspicious, and door of business open, officer "had every right to enter the building and make sure that it was secure and that no burglary was going on."). But cf. United States v. Erickson, 991 F.2d 529 (9th Cir.1993) (where neighbors said the suspected burglars departed by car over an hour earlier, police looking in basement window of residence thought to have been burglarized constituted an illegal search despite claim police engaged in lawful "community caretaking function" as (i) warrantless search for such reason still requires "exigent circumstances" not present here given passage of time; and (ii) even if police trying to act for householder's benefit, that person is still entitled to protection of the Fourth Amendment); United States v. Selberg, 630 F.2d 1292 (8th Cir.1980), (police entry unlawful where neighbor who was asked by defendant to watch his house trailer while defendant was away saw defendant depart and leave front door open and called police when door still open one day later but there was no sign of forced entry.)
We are satisfied that the application of this exception to the requirement for a warrant is justified in this case. There is no suggestion that the police entered the garage as a ruse to search for evidence of a crime committed by the lessee. The police were flagged down by a citizen who told them of the burglary. The quick capture of Gillick near the scene clearly indicated that a burglary had just occurred.
In addition, we reject the contention that the evidence in this case must be suppressed because of the rejection of a crime scene exception to the requirement for a search warrant. Here, the police had a right to enter the premises and, consequently, to make plain view observations. Those observations did not constitute a proscribed search of a crime scene. The crime scene exception was first discussed by the United States Supreme Court in Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290, (1978). In Mincey, there was a narcotics raid on defendant's apartment by undercover and plainclothes policemen. During the raid, defendant was wounded as were two other persons in the apartment. Other than looking for victims of the shooting and arranging for medical assistance, the narcotics agents, pursuant to a police department directive, made no further investigation. Shortly thereafter, however, homicide detectives arrived on the scene to take charge of the investigation and they proceeded to conduct an exhaustive four-day warrantless search of the apartment, which included the opening of dresser drawers, the ripping up of carpets and the seizure of 200 to 300 objects. The Arizona Supreme Court held that the warrantless search of a homicide scene was permissible under the Fourth and Fourteenth Amendments. It created a so-called murder scene exception to the requirement for a warrant. The United States Supreme Court disagreed holding that there is no such murder scene exception and suppressed the evidence seized by the homicide detectives. However, the opinion of the United States Supreme Court explicitly created an exception to the requirement for a warrant where the police search only for other crime victims or criminals and the Court noted that the police may seize *171 any evidence that is in plain view during the course of such legitimate emergency activities. Mincey, supra, 437 U.S. at 393, 98 S.Ct. at 2413, 57 L.Ed.2d at 300. Later, in Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), the Court emphasized that while there is no crime scene exception to the requirement for a warrant, officers who originally arrive at a crime scene to assist a victim may make a limited search for other victims or a suspect and that only a more extensive search requires a warrant. Finally, in Flippo, supra, the court again emphasized that extensive searchessuch as the sixteen-hour search in Flipporequire a warrant and that there is no crime scene exception in the case of murder.
Here, we are not presented with an extensive crime scene search. The officers entered private premises which had just been burglarized for the purpose of determining whether there were any burglars on the premises. They immediately recognized that the garage was a "chop shop." The motion judge, in our view, failed to make the necessary distinction between a permissible warrantless entry into premises where a crime is occurring or has just occurred and, on the other hand, a proscribed warrantless search of the crime scene following the entry. This record demonstrates a permissible entry followed by a plain-view observation of incriminating evidence. Thus the proscribed crime-scene exception does not apply to these facts.
The motion judge made no determination as to whether the VIN numbers were in plain view. But even in the unlikely event that they were not, we are satisfied, from the record below, that the officers would have made application for a search warrant based upon their initial recognition that the garage was a "chop shop." Probable cause existed even in the absence of information regarding the VIN numbers and that warrant would have issued resulting in the inevitable discovery of all the evidence seized by the warrant. See State v. Sugar, 100 N.J. 214, 495 A.2d 90 (1985).
Accordingly, the order suppressing evidence seized in the garage is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.