No. 03-422

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 134

STATE OF MONTANA,

        Plaintiff and Appellant,

   v.

ALBERT ALLEN LANEGAN,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, Cause No. DC-03-03,
The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Hon. Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

           Bernie Cassidy, Lincoln County Attorney; Robert Slomski, Deputy County
Attorney, Libby, Montana

      For Respondent:

           Scott B. Spencer, Lincoln County Public Defender, Libby, Montana

Submitted on Briefs:  October 23, 2003

Decided:  May 25, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 An Information filed January 17, 2003, charged Albert Allen Lanegan (Lanegan) with criminal possession of dangerous drugs, a felony in violation of § 45-9-102, MCA, criminal possession of drug paraphernalia, a misdemeanor in violation of § 45-10-103, MCA, and obstructing a peace officer, a misdemeanor in violation of § 45-7-302, MCA. Lanegan filed a Motion to Suppress all evidence seized from his person or vehicle when arrested. On May 22, 2003, the District Court granted the Motion. It is from the Findings of Fact, Conclusions of Law and Order Granting Motion to Suppress Evidence that the State appeals. We Affirm. The only issue on appeal is as follows:

¶2 Did the District Court err when it concluded that exigent circumstances did not permit the opening of Defendant's fanny pack immediately following his arrest?

## BACKGROUND

¶3 In the early hours of December 28, 2002, Deputy Shane Hight, Lincoln County Sheriff's Department, patrolled past the Town Pump gas station in Libby on routine patrol. He observed a man standing next to a white Toyota Celica, appearing to kick the tires. Surmising that the vehicle may have been disabled, he radioed dispatch to check the license of the vehicle. The check uncovered that the plates were actually registered to a red Chevy Nova, and the registered owner of the Nova was known by Deputy Hight to be involved in illegal drug activity.

¶4 Deputy Hight pulled into the Town Pump parking lot to investigate the license plate discrepancy as the two occupants of the vehicle walked towards the building. Upon asking the two to return to the vehicle, Deputy Hight established that the parties were Patricia Eaker

2

(Eaker) and Albert Lanegan. Deputy Hight commenced questioning Eaker while Lanegan leaned against the car on the other side. Within two minutes of Deputy Hight making initial contact, Officer Josh Harth, Libby City Police Department, arrived on the scene in a separate patrol car and engaged Lanegan in conversation while Deputy Hight interviewed Eaker.

¶5     Upon Deputy Hight's explanation of the stop, Eaker told him that she had borrowed the car two days earlier and knew nothing of the license plate discrepancy. Due to her nervous appearance, overly emotional state and difficulty standing still, Deputy Hight concluded that she might be under the influence of drugs. Additionally, during Deputy Hight's questioning of Eaker, Lanegan became agitated and continually injected himself into the discussion both loudly and profanely. In response to Deputy Hight's inquiry as to if she possessed any weapons, Eaker said no and refused to consent to a purse search after Lanegan shouted advice not to consent.

¶6     Upon conclusion of Eaker's investigation, Deputy Hight approached Lanegan and as he did, he noticed a bulge in Lanegan's right coat pocket. Deputy Hight testified that he asked Lanegan if he had any weapons, and that Lanegan responded that he did have a gun, although he did not indicate where the gun was located. Lanegan testified that in response to Deputy Hight's question, he stated that he did not have a weapon but there was one underneath the passenger seat in the car. Lanegan stepped back, and Deputy Hight grabbed Lanegan, informing him that he was not under arrest, however, Hight wanted to pat him down for weapons. Lanegan did not cooperate, struggled and shoved his hands into his pockets, then told Deputy Hight that he refused to submit to a pat down. Concerned for his safety at that point, Deputy Hight handcuffed Lanegan and arrested him for obstructing a

3

peace officer. Deputy Hight then retrieved the item in Lanegan's right pocket that was making the bulge--a black fanny pack about the size that would accommodate a medium sized pare of binoculars.

¶7 After Deputy Hight handcuffed Lanegan, he proceeded to unzip the retrieved black fanny pack and observed a hypodermic needle filled with a clear liquid, a white powdery substance, and other items that appeared to be drug related. He did not find a pistol in the fanny pack and this could have been ascertained by squeezing the pliable fanny pack, however, according to Deputy Hight's testimony, it is not good policy to squeeze a container that might contain a hypodermic needle as was ultimately the case in this instance. Deputy Hight testified that these events happened within seconds, and Lanegan told him that his gun was under the passenger seat in the car either right before or right after he opened the fanny pack. He further testified that once he handcuffed Lanegan, he no longer felt immediately threatened.

¶8 While Deputy Hight questioned Lanegan, Eaker took her purse and entered into the Town Pump building. She later emerged holding a cell phone and ran over to Deputy Hight's patrol car dumping the contents of her purse on the hood. Officer Harth testified that he retrieved the gun from under the passenger seat after Lanegan was already in the back of the patrol car.

¶9 On February 26, 2003, Lanegan filed a Motion to Suppress the evidence seized from his person or vehicle by Deputy Hight. After a hearing held on May 21, 2003, the District Court granted Lanegan's Motion. It is from this Order that the State appeals. We affirm.

## STANDARD OF REVIEW

¶10   The standard of review for a district court's grant of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Roberts*, 1999 MT 59, ¶ 11, 293 Mont. 476, ¶ 11, 977 P.2d 974, ¶ 11. A trial court's findings are clearly erroneous if not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if this Court's review of the record leaves us with the firm conviction that a mistake has been made. *Roberts*, ¶ 11.

¶11   Whether the factual circumstances determined by a district court constitute exigent circumstances is a conclusion of law reviewed for correctness. *State v. Saxton*, 2003 MT 105, ¶ 19, 315 Mont. 315, ¶ 19, 68 P.3d 721, ¶ 19.

## DISCUSSION

¶12   Did the District Court err when it concluded that exigent circumstances did not permit the opening of Defendant's fanny pack immediately following his arrest?

¶13   The District Court concluded that Deputy Hight was justified in performing an investigative stop of Lanegan. When Lanegan refused to cooperate, Deputy Hight was justified in placing him under arrest. The District Court found that once Lanegan was arrested, the stop and frisk procedure authorized under § 46-5-401, MCA, no longer applied. Furthermore, § 46-5-102, MCA, permitted Deputy Hight to search Lanegan incident to his arrest within certain limitations, none of which the District Court found applicable to the instant set of circumstances. Finally, the District Court found that the exigent circumstances exception to the search warrant requirement did not apply because the necessary element of immediacy was not present when Lanegan had already been subdued and handcuffed by the

5

time Deputy Hight possessed the fanny pack. Therefore, the District Court found if there was probable cause to believe the fanny pack contained evidence of a crime, there was sufficient time to secure a search warrant. Consequently, the District Court granted Lanegan's Motion to Suppress. We agree with the District Court.

¶14 The State argues that the District Court erred when it concluded that exigent circumstances did not permit opening the fanny pack. Central to this argument is the theory that the court neglected to consider the totality of the circumstances in reference to officer safety. For instance, the State asserts that the following factors contributed to exigent circumstances justifying a warrantless search: (1) Eaker's unpredictable behavior; (2) Eaker's use of a telephone, possibly to call for help; (3) the fact that both Lanegan and Eaker were thought to be on methamphetamines, thus a danger to the officers' safety; (4) the early morning hour contributing to the natural isolation of the officers; and (5) the escalation of the situation changing from a traffic stop to one involving a gun and methamphetamine.

¶15 While conceding that federal case law does not permit free-ranging searches incident to arrest, the State cites numerous federal cases to support its claim that law enforcement has the right to search an item incident to arrest even if such item is no longer accessible to the defendant at the time of the search. Moreover, recognizing that the Montana Constitution provides a heightened protection of a citizen's privacy rights, see *State v. Hardaway*, 2001 MT 252, ¶ 40, 307 Mont. 139, ¶ 40, 36 P.3d 900, ¶ 40, the State maintains that their position under the totality of these specific circumstances is supported by state case law. Yet, the State goes on to draw our attention to other state and federal opinions, not Montana case law.

¶16 The United States and Montana Constitutions protect persons from unreasonable

6

search and seizure. *Saxton*, ¶ 25. Under Montana Law, warrantless searches are *per se* unreasonable, with few exceptions to that rule. *See State v. Galpin*, 2003 MT 324, ¶ 54, 318 Mont. 318, ¶ 54, 80 P.3d 1207, ¶ 54. One such exception to the warrant requirement is where an officer concludes that there are exigent circumstances and probable cause justifies a warrantless search. *Saxton*, ¶ 26. We have said that:

> Exigent circumstances are those that would cause a reasonable person to believe prompt action is necessary to prevent physical harm to police officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.

*State v. Logan*, 2002 MT 206, ¶ 17, 311 Mont. 239, ¶ 17, 53 P.3d 1285, ¶ 17. In assessing exigent circumstances, we have said that the court must consider the totality of such circumstances. *State v. McCarthy* (1993), 258 Mont. 51, 57, 852 P.2d 111, 115.

¶17 Based on the facts of this case, we agree with the District Court that there were no exigent circumstances justifying a warrantless search of Lanegan's fanny pack. The State bears the heavy burden of showing the existence of exigent circumstances. *State v. Wakeford*, 1998 MT 16, ¶ 24, 287 Mont. 220, ¶ 24, 953 P.2d 1065, ¶ 24. We conclude that it did not meet its burden.

¶18 Deputy Hight arrested Lanegan for obstructing a peace officer. Section 46-5-102, MCA, permits warrantless searches of the area within the arrestee's presence for the following purposes: (1) to protect the officer from attack; (2) to prevent the arrestee from escaping; (3) to discover and seize fruits of the crime; or (4) to discover and seize any people or items which may have been used in committing--constitute evidence of--a crime. The search of Lanegan's fanny pack would not have protected the arresting officers from Lanegan

7

due to the fact that he was already handcuffed. Lanegan could not have escaped because he was already under the Deputy's control. The search conducted would not have resulted in discovery of fruits of the crime of obstructing a peace officer, nor would it have resulted in discovery of anything that may have been used in the commission of the offense of obstructing a peace officer. Consequently, the District Court correctly granted Lanegan's request to suppress evidence harvested as a result of this warrantless search of his fanny pack.

¶19    We therefore conclude, from the facts and circumstances present at the time of Lanegan's arrest, that Deputy Hight's search of Lanegan's fanny pack did not rise to the level of exigent circumstances as allowed pursuant to § 46-5-102, MCA. Accordingly, the District Court did not err when it granted Lanegan's Motion to Suppress evidence obtained as a result of the search.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

8

Justice Jim Rice dissenting.

¶20 I respectfully dissent. The District Court's order granting the motion to suppress failed to consider important evidence relevant to the search conducted here, and, consequently, the court entered conclusions of law which were incorrect. If properly considered by this Court, the evidence would require reversal.

¶21 First, as a preliminary matter, Respondent Lanegan failed to file a brief. "[W]here a respondent does not appear by brief or argument on appeal, this Court will take appellant's versions and positions as being correct if they are supported by the record. *Alden v. Board of Zoning Comm'rs* (1974), 165 Mont. 364, 365, 528 P.2d 1320, 1320." *City of Kalispell v. Cameron*, 2002 MT 78, ¶ 15, 309 Mont. 248, ¶ 15, 46 P.3d 46, ¶ 15 (Nelson, J., concurring). Here, the State's positions are well supported by the record and should be taken as correct.

¶22 The District Court concluded that there were no exigent circumstances to justify unzipping the fanny pack because Lanegan was then "subdued," and thus, "[t]he necessary element of immediacy [was] not present." This Court concurs with these conclusions. *See* ¶ 13. However, the Court errs, as the District Court did, by narrowly focusing on Lanegan's handcuffed condition and ignoring the more significant evidence of other exigent circumstances.

¶23 Lanegan, who was "very verbally abusive" and acting "nervous, flighty, paranoid," refused to be frisked, told officers he had a gun, and reached for the bulge in his pocket when Hight attempted to frisk him.

[Hight] A. He put his right hand in the same pocket to where the bulge was.

[Prosecutor] Q. How long did all this take?

A. Seconds.

Q. Okay. What went through your mind when he put his hand into that right pocket, where you saw where the bulge was, after he told you he had a gun?

A. I thought he was going for a gun.

Q. What did you do?

A. I grabbed onto him and told him that he's not under arrest. And he pulled away from me. I told him I was just going to pat him down. He pulled away from me. I grabbed both of his arms, pulled his hand out of the pocket, and I cuffed him up and arrested him for obstructing at that point.

. . . .

Q. Did you feel threatened?

A. Absolutely.

¶24 *Immediately* after handcuffing Lanegan, Hight opened the pack "because I thought there may be a gun in it." He testified that there was "probably a hundred different models" of firearms that would have fit within the fanny pack. Further, Hight expressed a concern about other items in the pack which could "poke me, stick me, or stab me."

¶25 Then, Eaker, who had "disappeared" when Hight had turned his attention to Lanegan, and who, according to Hight, "couldn't stand still" and was "very nervous," came running out of the Town Pump and toward the vehicles. She begun dumping the contents of her purse unto the hood of the patrol vehicle. Obviously, this situation was anything but "subdued."

¶26 Although Lanegan was handcuffed, and Hight felt no fear of Lanegan's possible use of a weapon at that point, Hight nonetheless retained legitimate fears about the contents of

10

the pack, given what had occurred. Lanegan had reached for the pack as Hight attempted to frisk him, and very well could have been reaching for a gun, which he claimed to have, or for another kind of weapon. Further, with Eaker running about and dumping items on the patrol car, the situation remained fluid. Under these circumstances, police should be able to open the pack to determine if there was something–such as a loaded firearm– that could harm them or the other people present. Indeed, exigent circumstances "are those that would cause a reasonable person to believe prompt action is necessary to prevent physical harm to police officers or other persons . . . or some other consequence improperly frustrating legitimate law enforcement efforts." *State v. Logan*, 2002 MT 206, ¶ 17, 311 Mont. 239, ¶ 17, 53 P.3d 1285, ¶ 17. Regrettably, however, the Court would require the police to "gingerly" hold the potentially dangerous pack until a warrant is obtained, while simultaneously handling another party who was out of control. That is unreasonable.

¶27 The officers acted correctly in the entire incident. They refrained from searching Eaker's purse when she refused to consent. In contrast, they searched Lanegan's pack because it presented a legitimate danger. The District Court failed to consider all the circumstances and entered incorrect conclusions of law. I would reverse.

/S/ JIM RICE

11