JUSTICE RICE concurs
in part and dissents in part.
¶48 I concur with the Court’s conclusion that evidence photographed and seized by McCord on his first and second visits into the structure was improperly excluded by the District Court and join in reversing the District Court on those grounds. However, I dissent from the Court’s conclusion that McCord’s third and subsequent entries into the structure were not continuations of his initial entry and justified by exigent circumstances, and would likewise reverse this holding of the District Court.
¶49 “In assessing exigent circumstances, we have said that the court must consider the totality of such circumstances.” State v. Lanegan, 2004 MT 134, ¶ 16, 321 Mont. 349, ¶ 16, 91 P.3d 578, ¶ 16. Here, the Court ignores the continuous nature of McCord’s presence at the “crime scene,” characterizes McCord’s third and subsequent entries into the structure as though they were a fishing expedition for some smoking gun, and reaches a result that is impractical and unrealistic in the context of a rural arson investigation. Exigent circumstances justified McCord’s initial entries, and the totality of the circumstances indicates that McCord’s subsequent entries were also mere continuations of the first two entries.
¶50 The Court has failed to acknowledge obvious distinctions between Bassett and the present case. In Bassett, a fire broke out at a residential home during the middle of the night, and firefighters fought the blaze until the following morning. Law enforcement officers were not present and played no role in the fire suppression efforts. Bassett, ¶ 6. However, while the firefighters were “mopping up,” they discovered a florescent light and marijuana plants in the defendant’s bedroom closet. They reported their findings to the sheriffs office, and a deputy sheriff arrived at the home shortly thereafter. Bassett, ¶¶ 8-9. By the time the deputy sheriff arrived, the fire was extinguished, no fire fighting equipment remained, the firefighters had all been released, and the assistant fire marshal had installed fire line tape around the defendant’s home to keep people away. Bassett, ¶ 10. Despite his later admission that no pressing reason or exigency existed to prevent him from obtaining a search warrant, the deputy sheriff *27 entered the home and seized the plants, equipment, and supplies. Bassett, ¶ 11.
¶51 The defendant moved to suppress the fruits of the deputy sheriffs search. We relied on language from the Ninth Circuit’s holding in United States v. Hoffman, 607 F.2d 280 (9th Cir. 1979), which stated:
[The police officer’s] only purpose in entering appellant’s trailer, as he forthrightly admitted, was to seize evidence of an unrelated federal crime. . . . One whose home is ablaze certainly should expect that firemen will enter in order to extinguish the fire. Likewise, one should also expect that these same firefighters will be looking for the source or cause of the fire while within the home. But, no citizen should reasonably expect that, because a fire has occurred in his home, and certain few officials may enter, any sort of public officer may thereafter invade his home for purposes unrelated to that intrusion.
Hoffman, 607 F.2d at 284-85 (internal citations omitted) (emphasis added). In adopting the analysis from Hoffman, we reiterated that simply because firefighters enter a home to extinguish a fire does not mean that other government officers may enter the home to search for evidence of unrelated criminal activity. Bassett, ¶ 37. Moreover, we emphasized that “[b]ecause the fire appeared to be extinguished and there was no imminent danger that the evidence would be destroyed, this was not a situation where it was impracticable to obtain a warrant.” Bassett, ¶ 48. Indeed, the firefighters had left, the equipment was gone, and the scene had been taped off.
¶52 The present case is entirely distinguishable from Bassett, but is analogous to Tyler. In Tyler, a fire broke out in a furniture store shortly before midnight, and upon entering the store firefighters found two plastic containers of flammable liquid. After concluding that the fire could have been caused by arson, the firefighters summoned a police detective, who arrived around 3:30 a.m. Tyler, 436 U.S. at 502, 98 S. Ct. at 1946. The detective “took several pictures of the containers and of the interior of the store, but finally abandoned his efforts because of the smoke and steam.” Tyler, 436 U.S. at 502, 98 S. Ct. at 1946. The firefighters thereafter removed and preserved the two containers of flammable liquid. At 9:00 a.m. the following morning, the detective returned to the store with another detective and “searched through the rubble ‘looking for any other signs or evidence that showed how this fire was caused,’ ” in the process seizing several pieces of carpet and stairs as “evidence suggestive of a fuse trail.” Tyler, 436 U.S. at 502, 98 S. Ct. at 1946. *28 ¶53 In upholding the firefighters’ and detectives’ search and seizure of evidence, the United States Supreme Court rejected the notion that “the exigency justifying a warrantless entry to fight a fire ends, and the need to get a warrant begins, with the dousing of the last flame.” Tyler, 436 U.S. at 510, 98 S. Ct. at 1950. The Supreme Court characterized this view of the firefighting function as “unrealistically narrow,” and held that “officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished.” 436 U.S. at 510, 98 S. Ct. at 1950. Implicit in this holding, based on the facts of that case, is the rule that such an investigation does not require officers to stay physically present inside the structure throughout the time they are investigating, or that law enforcement must be actively participating in suppression efforts, as this Court would require. Indeed, the detective in Tyler left the premises for five hours, and even upon returning, left the structure again to obtain tools. The United States Supreme Court nonetheless held that “the morning entries were no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence.” Tyler, 436 U.S. at 511,98 S. Ct. at 1951.
¶54 The present case is distinguishable from Bassett because, in contrast to the defendant in that case, here McCord was not entering the structure on a fishing expedition for evidence of unrelated criminal activity. In Bassett, the deputy sheriff was looking for evidence of drug possession. Here, McCord was looking for evidence of arson-the crime resulting in McCord’s presence at the structure in the first place. Indeed, McCord’s original entry was in fact in a firefighting capacity, and his third and subsequent visits were to further investigate the cause of the fire, intending to prevent the destruction of evidence. Had McCord simply stayed in the smoky structure the entire time, it seems apparent that this Court would have no issue with his actions. Nonetheless, because he entered and exited the building over the course of a few hours, this Court excludes all evidence discovered after his second entry into the home.
¶55 McCord never left the premises, as the detective did in Tyler, but instead conducted an efficient investigation for evidence that could easily be moved, thereby completing his survey of the house less than an hour and a half after the structure had been ventilated by the Lewistown Fire Department, and less than three hours after he first arrived. The evidence seized by McCord was not only in danger of destruction from firefighting efforts, but was small, mobile and could *29 have easily been disrupted or removed by such firefighters. See Bassett, ¶ 47 (“In determining whether exigent circumstances exist, the court considers factors such as the possible destruction of evidence, the mobility of the evidence ....”).
¶56 The result the Court reaches today creates an unrealistic, unworkable standard by drawing an ambiguous line as to when law enforcement’s preliminary investigation at the scene of a possible arson must cease. According to the Court, McCord’s subsequent entries into the structure became “clearly detached” from his initial entry-thus necessitating a warrant-as soon as McCord determined that Lewis’s residence was a “crime scene.” This is an unworkable and ambiguous standard, and directly contradicts the United States Supreme Court’s holding in Tyler, where that detective’s presence only came about after firefighters notified police that the fire was a possible arson. To require law enforcement to abandon a structure as soon as it is determined that the area is a “crime scene” requires law enforcement to draw a line in their investigation that has not been, and cannot be, easily characterized or identified.
¶57 The “totality of the circumstances” dictated that McCord finish his ongoing, continuous investigation to prevent further evidence from being destroyed or displaced by firefighters. As the United States Supreme Court stated in Tyler, the exigency justifying McCord’s presence did not end “with the dousing of the last flame.” To require McCord to pack up and head back to town when he determined he was at a “crime scene,” and when he was no longer helping with fire suppression efforts, simply does not comport with common sense, the realities of a rural arson investigation or the requirements of the constitution. I would hold that all of the evidence discovered during McCord’s brief arson investigation was admissible and improperly excluded by the District Court.
¶58 The Court’s response to this dissent perfectly illustrates the lack of common sense in its decision. In the Court’s view, this case turns on the fact that McCord had walked outside to deposit evidence in his car and that the fire crew arrived at this remote fire location seventeen minutes later, after which McCord reentered the premises. To the Court, these facts demonstrate that there was no exigency and that McCord was then required to retreat and apply for a search warrant. The Court can cite no case-no case, state or federal-which has ever required a warrant under such circumstances, or any authority for such a rigid view of exigency. Indeed, all of the cited authority stands precisely for the contrary. There is no authority for the Court’s *30 conclusion because it cannot withstand a simple, logical query: was it possible that further evidence was in the house which could have been lost during firefighting efforts? Of course it was possible. Although the Court asserts that, by that time, the source of the fire had already been determined and there was no further evidence to be recovered, the Court is blinded by the sharp effects of20/20 hindsight. For all McCord knew, there may well have been additional evidence, and it may just as well have been destroyed during firefighting efforts-efforts which would have been ongoing while McCord rushed back to town to apply for a warrant. McCord was doing his job well, and the Court’s decision, hinging as it does on the “seventeen minute gap” in the course of McCord’s investigation, lacks connection to the reality of the circumstances or the requirements of the law.